JAMES LEE CHATMAN *v.* STATE OF INDIANA.

[No. 1273S250. Filed September 23, 1975.]

*Anthony V. Luber,* of South Bend, *Kenneth M. McDermott,* of Plymouth, for appellant.

*Theodore L. Sendak,* Attorney General, *Henry O. Sitler,* Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was charged by indictment with murder in the first degree in connection with the death of the decedent who was shot to death in St. Joseph County. He was convicted of murder in the second degree in a trial by jury held in Marshall County and sentenced to life imprisonment. His appeal presents sixteen issues which will be here related in the order of their appearance in his brief.

ISSUE I. RIGHTS UNDER STATE AND FEDERAL CONSTITUTION TO BE TRIED IN COUNTY WHERE CRIME WAS COMMITTED AND BURDENS RELATIVE TO WAIVER OF SUCH RIGHT.

Defendant was charged in St. Joseph County where the crime was committed. He appeared four times before the court without counsel, and at his request three continuances for arraignment for more time in which to employ counsel were granted. Ultimately, after the lapse of seventy days, the court appointed counsel. On the following day, which was the occasion of the fourth appearance and the day scheduled for arraignment, the defendant again stated that he was without counsel, whereupon the court advised him of the appointment on the preceding day and that such counsel would serve until such time as private counsel was employed. The cause was again continued for arraignment, this time for seven days to November 6, 1972. The defendant appeared in person and by counsel on November 6 and filed a motion for a change of venue from the county for cause verified by the defendant. The motion was granted, and the case was venued to Marshall County.

The record was received in Marshall County on November 29 and docketed on December 1, at which time the matter was set for arraignment on December 8. On December 8, the defendant appeared in person and by his appointed counsel, who was reappointed by the Marshall Circuit Court, was arraigned and entered a plea of not guilty. During the arraignment hearing, the defendant advised the court that he wanted to be returned to and tried in St. Joseph County because he had family and friends there, did not believe that he could get a fair trial in Marshall County and wanted some black people on the jury. The court explained that they were not present at that time to select a jury or to entertain a change of venue motion, that the defendant would have an opportunity later to challenge jurors he did not want and that he could file a motion for a change of venue later, if he desired. At Defendant's request, joined in by the State, the defendant was then returned to St. Joseph County Jail for convenience of visitation.

It is the defendant's contention that although he requested the change of venue from St. Joseph County, he had a right under the Sixth and Fourteenth Amendments to the Constitution of the United States and under Article 1, Section 13 of the Constitution of Indiana to be tried there, that the motion for a change was a waiver that could only be given intelligently and voluntarily and that such waiver could not be presumed from a silent record.

There are a number of reasons why the defendant is entitled to no relief under this assignment, the most obvious one being that we are not concerned with a mere waiver implied from the circumstances but rather with a specific written request filed by the defendant and in the record. The court cannot be required to determine and record the mental processes, motives and awareness of a defendant upon every motion and every ruling throughout a criminal proceeding.

The law does require that a guilty plea be vacated unless it can be demonstrated from the record that it was voluntarily, knowingly and intelligently entered; and a waiver of the important constitutional rights implicit in a guilty plea may not be presumed from a silent record. As has been said, a plea of guilty is itself a conviction and not a mere confession. Nothing remains but to give judgment and determine punishment. *Boykin* v. *Alabama,* (1969) 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274. It is altogether reasonable, therefore that the court go to great lengths to protect accused persons from the consequences of guilty pleas and erect strong barriers against the possibility of such pleas being induced by fraud, fear, force or ignorance. But we are not here concerned with a judgment resting upon a waiver or a motion, but rather with a selection of the forum. If we are to regard the motion for a change of venue as a waiver—which in a sense it is—it, nevertheless, relates only to the selection of the forum, not to the judgment, and a defendant granted a change of forum continues to be surrounded with all relevant constitutional safeguards.

ISSUES II and III. CONSTITUTIONALITY OF "NOTICE OF ALIBI" STATUTE.

Under these assignments, the defendant challenges the constitutionality of the alibi statute (Burns § 9-1631, Ind. Code § 35-5-1-1) ; and he asserts that it was error for the court to require him to disclose the identity of his alibi witnesses and to preclude his tendered witness, James Martin, from testifying because he had not been named on the list of alibi witnesses. In support of these contentions, he cites *Wardius* v. *Oregon*, (1973) 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82, wherein the Supreme Court of the United States held the alibi statute of Oregon unconstitutional by reason of its failure to provide for reciprocal discovery by the defendant of the state's alibi rebuttal witnesses. We believe, however, that the defendant has no standing with respect to either of these exceptions.

In *Wardius* v. *Oregon, supra,* the appellant had tendered alibi witnesses without having first complied with the statutory requirement of notice and identification. The trial court refused to permit his alibi witnesses to testify. The defendant in the case at bar, gave alibi notice and identified six alibi witnesses, three of whom testified and placed him in the City of Detroit, Michigan at or near the time the crime was committed. The State did not rebut the testimony of any of these witnesses; consequently, the defendant could not have been harmed by the absence of a statutory provision providing for reciprocal notice as to alibi rebuttal witnesses. The possibility of the State's having surprised the defendant with alibi rebuttal witnesses is, in this case, of academic interest only.

Following examination and cross examination of the aforementioned three alibi witnesses, the defendant called James Martin to the stand and preliminarily identified him as the husband of alibi witness, Margaret Martin, whereupon the State objected to his testifying by reason of his not having been previously identified as an

alibi witness. The court sustained the objection, and the witness was not interrogated further. We cannot determine if the defendant might have been prejudiced by the exclusion of Mr. Martin's testimony, as we do not know what his testimony, if allowed, would have been. Error, if any, in the exclusion of testimony must be brought into the record by an offer to prove, and the defendant made no such offer. *Marposon* v. *State,* (1972) 259 Ind. 426, 287 N.E.2d 857; *Burnett* v. *State,* (1975) Ind. App., 322 N.E.2d 125.

ISSUE IV. LEGALITY OF SEARCH AND ADMISSIBILITY OF EVIDENCE THEREBY OBTAINED.

The defendant filed a motion to suppress with respect to the gun, bullets and a bullet clip (State's Exhibits 1, 2 and 3) that had been confiscated when he was arrested in Detroit as previously related. Basis for the motion was that the search by the Detroit police was unconstitutional. The arresting officer testified that he and his anti-crime-in-the-street "task force" stopped the defendant and his companions because of out-of-state license plates, erratic driving and the thought that they might be lost and that, in the process, he saw the defendant remove a gun from underneath his coat and lean forward with it. The exhibits were taken from underneath the front seat, and the defendant was arrested for carrying a concealed weapon.

At the hearing upon the motion to suppress, the defendant and those with him at the time of the aforementioned arrest refuted the officer's testimony. They denied that the defendant was driving erratically, that he took the gun from his pocket and placed it under the seat and that the officer could have observed it even if he had.

The defendant's sole argument upon this issue related to the credibility of the witnesses and the weight of the evidence at the hearing upon the motion to suppress. The evidence was conflicting. We cannot say that the trial judge erred in overruling the motion. He was

the trier of the fact upon that issue and as such was the judge of weight and credibility. *Hubble* v. *State,* (1973) 260 Ind. 655, 299 N.E.2d 612; *Bledsoe* v. *State,* (1975) 263 Ind. 265, 329 N.E.2d 592.

## ISSUE V. CORRECTNESS OF RULING ON STATE'S MOTION IN LIMINE.

The trial court sustained a motion in limine precluding the defendant from offering evidence of his acquittal in a Michigan trial upon a charge of carrying a concealed weapon. It appears that the weapon he was charged with concealing was the one with which the decedent was killed. The defendant speculates that the disclosure of his acquittal would have discredited the testimony of the police officer who arrested him in Michigan and testified at the murder trial that the defendant was in possession of the weapon at the time of the arrest in Michigan—which was the day following the murder.

We do not agree that the defendant's acquittal on the concealed weapon charge was relevant to the murder charge. An acquittal upon a criminal charge is not an indication that the trier of fact found against the State upon all issues of fact or upon any particular issue of fact. In only discloses that the State failed in its burden to prove all material issues beyond and to the exclusion of every reasonable doubt.

## ISSUE VI. CORRECTNESS OF RULING DENYING DEFENDANT'S MOTION FOR A MISTRIAL.

In the State's opening statement, the prosecutor told the jury that the defendant had been arrested in Detroit for possession of a gun and also that he had filed a notice of alibi. The defendant moved for a mistrial, citing these statements as prosecutorial misconduct. The motion was denied.

The grant of a mistrial for misconduct lies in the sound discretion of the trial judge, and his ruling thereupon will

not be disturbed except for good cause. *Whitten; Bailey* v. *State,* (1975) 263 Ind. 407, 333 N.E.2d 86; *Duke* v. *State,* (1968) 249 Ind. 466, 233 N.E.2d 159; *White* v. *State,* (1971) 257 Ind. 64, 272 N.E.2d 312. Notwithstanding that at the time of the opening statement the admissibility of the evidence concerning the gun was a matter yet unresolved and under advisement of the judge upon the motion to suppress, the motion to suppress was subsequently overruled, and the gun and evidence concerning the defendant's possession of it were allowed in evidence. Defendant would lead us to believe by his brief (p. 34) that there was a protective order in existence at the time of the prosecutor's opening statement and that the reference to the arrest incident in Detroit was a direct violation of that order. Our examination of the record discloses that such order was made following the opening statement and subsequent to the motion for mistrial. (Transcript pp. 132-137) We agree that it was improper for the prosecutor, in his opening statement, to allude to evidence the admissibility of which was under advisement. At best, in most circles, it would be regarded as unprofessional practice—as would a misstatement to this Court of the sequence of events.

As for the prosecutor's mention of the alibi notice, the defendant has given us no authority to support his contention that this was misconduct. He asserts that it forced him to present alibi evidence or to risk the speculation of the jury as to why he did not do so. He had given such notice, and it had not been withdrawn. He did present alibi evidence and, in fact, that was his sole defense. The alibi notice did not limit him to that defense alone, and we cannot perceive that he would have foregone presenting any other available defense or defenses, or that the presentation of alibi evidence, in addition to other defenses, could conceivably have prejudiced him.

We find no error in the denial of the mistrial motion.

ISSUE VII. COMPETENCY OF ACCOMPLICE AS WITNESS.

Walter Ivory was an accomplice of Defendant in the robbery and murder. He was called to the witness stand by the prosecutor, and the defendant objected to his testifying upon the ground that he was incompetent as a witness, citing Ind. Code § 35-1-31-3, Burns § 9-1603, which provides, among other things, that accomplices are incompetent witnesses unless they consent to testify. From *Shepherd* v. *State*, (1971) 257 Ind. 229, 277 N.E.2d 165 and *Millington* v. *State*, (1972) 154 Ind. App. 42, 289 N.E.2d 161, it will be seen that although the statute refers to competency of accomplices, a reading thereof in conjunction with the other related statutes and in the light of the common law reveals that it deals with the problem of the privileges of accomplices against self-incrimination. It is unnecessary to discuss this issue further, however, because the witness did consent to testify.

Defendant charges that he interposed the same objection to Samuel Riley's being permitted to testify as was made with respect to Walter Ivory, and he refers us to page 437 of the transcript but we cannot determine such from the record, nor does it appear that Riley was an accomplice. If he was, however, and if the objection was in fact made, we see no error. If he was privileged for any reason, the privilege was his not the defendant's. If such privilege was waived in return for immunity or other special dispensation, the credibility gap that may have thereby arisen was a matter to argue to the jury.

ISSUE VIII. CORRECTNESS OF RULING ON MOTION FOR MISTRIAL BASED UPON PREJUDICIAL NEWS RELEASES.

During the course of the trial, the defendant moved for a mistrial by reason of jury exposure to inaccurate and possi-

bly prejudicial news media reports. The record discloses that the trial court did voir dire the jury in response to the motion and substantially complied with the guidelines recently laid down by this Court in *Lindsey* v. *State*, (1973) 260 Ind. 351, 295 N.E.2d 819. There was no error in denying this motion.

### ISSUE IX. SUFFICIENCY OF THE EVIDENCE.

The defendant asserts that the evidence was insufficient to sustain a verdict of murder in the second degree, in that there was no evidence of the requisite purpose and malice. Without relating all of the evidence, it is sufficient for purposes of meeting this argument to relate that the decedent was killed by a bullet fired from a gun found the following day in the possession of the defendant. An accomplice of the defendant testified as follows:

"Jim pulled out his gun and I pulled out mine and then we said give me the money and he said I am not giving you nothing get out of here and about that time the man was reaching for Jimmy and he grabbed the gun out of his hand and the next thing I knew bam!!"

The defendant contends that inasmuch as he was not charged with felony murder, the evidence of the robbery does not go to the *mens rea* of murder but would be relevant only to the charge of involuntary manslaughter. He has cited no authority in support of this proposition, and we view it to be without merit.

Malice may be shown by evidence that the defendant deliberately used a deadly weapon in such a way as likely to produce death, *Blackburn* v. *State*, (1973) 260 Ind. 5, 291 N.E.2d 686; and in such case, the purpose to kill may be inferred from the act of killing. *Taylor* v. *State*, (1973) 260 Ind. 264, 295 N.E.2d 600. Intent and malice may be inferred from the circumstances in evidence and the use of a deadly weapon. *Aubrey* v. *State*, (1974) 261 Ind. 531, 307 N.E.2d 67.

The defendant went to the business house of the decedent with a gun to commit an armed robbery. This was sufficient evidence of malice. The decedent was killed by a shot fired from the defendant's gun. A reasonable inference from the foregoing is that the shot was fired intentionally. That the decedent resisted the robbery and possibly may have, thereby, prompted the firing of the fatal shot, by accident or in a sudden heat, renders the aforementioned inferences no less reasonable. The evidence was sufficient.

ISSUE X. CORRECTNESS OF RULING DENYING MOTION TO STRIKE A WITNESS' TESTIMONY FOR FAILURE OF THE STATE TO PRODUCE HIS GRAND JURY TESTIMONY.

Prior to trial, the defendant moved for and was granted a discovery order requiring the State to provide him with a transcript of the testimony given before the grand jury by any persons or, in the alternative, to file such a transcript with the court to have available at such time as said persons testify at the trial. Following the testimony of Officer Szweda, who did testify before the grand jury, defense counsel asked that the transcript of the witness' grand jury testimony be produced for inspection. At this juncture, it was disclosed that there was no such transcript but only untranscribed notes of the grand jury stenographer and the grand jury prosecutor's notes. The latter were produced but were so brief as to be unintelligible to all but the prosecutor. The defendant, thereupon, moved that all testimony of the witness be stricken. This motion was denied.

It is the defendant's position upon this issue that under the guidelines of *Antrobus et al.* v. *State*, (1970) 253 Ind. 420, 254 N.E.2d 873, the defendant had laid his foundation and was entitled to the transcript for purposes of cross examination and possible impeachment of the witness. He further charges that there were no grand jury notes and

that grand jury proceedings in St. Joseph County are deliberately conducted in such manner as to violate Ind. Code § 35-1-15-10, Burns § 9-810 requiring a clerk or stenographer to take and preserve notes. He maintains that to strike the testimony of a witness is the only way to correct the State's failure.

Although an accused may be entitled to discover the grand jury testimony, the statute requiring notes thereof to be kept was not intended for his benefit. Therefore, if such notes are not made, for whatever reason, we are not prepared to say that the indicted person is a competent party to complain. We do not appear to be faced with that question, however, as the record discloses to us that such notes probably did exist but simply had not been transcribed by the stenographer who took them. In view of the motion and order, the defendant was entitled to a transcript, if one could have been produced. We do not agree that the record shows that none could have been produced. Nor do we agree that the problem could only have been dealt with by imposing the sanction of striking the witness' testimony. Although there may be times when sanctions may be required for violation of the discovery order, we believe that the trial courts, in their sound discretion, can usually salvage the trial, administer substantial justice and preserve the dignity of the court by the grant of a continuance (*Chustak et al.* v. *Northern Indiana Public Service Company*, (1972) 259 Ind. 390, 288 N.E.2d 149) and by a citation against the offending counsel for contempt.

ISSUE XI. CORRECTNESS OF RULING REFUSING TO PERMIT THE DEFENDANT TO CALL THE TRIAL PROSECUTOR AS A WITNESS FOR THE DEFENDANT.

Samuel Riley was with the defendant when he was arrested in Detroit the day following the crime. He subsequently gave a signed statement to the trial prosecutor, who was investigating the offense. The statement had been signed by the

witness but written by the prosecutor during his investigatory interrogation of the witness. The witness later repudiated the statement and charged that he had signed it under duress from the prosecutor.

In the course of examining the witness, Riley, at the trial, the prosecutor undertook to impeach him upon a variance between the contents of the written statement and the ongoing testimony. The witness repeated his repudiation and charges of duress, and the prosecutor's interrogation became leading and argumentative with regard to the circumstances surrounding the investigatory interrogation. The defendant thereafter called the prosecutor to testify as a witness for the defense, upon the premise that he had, by the manner of his examination of the witness, testified as an unsworn witness and that the defendant was thereby entitled to cross examine him. The further contention was made that the prosecutor, having participated in the investigatory interrogation, was a material witness. The court granted the prosecutor's motion that he not be required to testify.

It is elementary that counsel is not ordinarily subject to call to the witness chair. There are exceptions, such as when counsel is believed to have material information that cannot be otherwise disclosed. The circumstances of this case are not analogous to those under consideration in the cases cited as authority by the defendant upon this point. Neither did the prosecutor's "heated" pursuit of the witness amount to testimony or reach the stage of misconduct. It is apparent to this Court, as it must have been to the trial judge, that the attempt to put the prosecutor upon the witness stand was an ill-concealed effort to turn the proceedings into a trial of the prosecutor and thus divert attention from the real issues of the case. The trial judge correctly precluded this by excusing the prosecutor from testifying.

ISSUE XII. CORRECTNESS OF RULE PERMITTING THE STATE TO REBUT THE TESTIMONY OF A WITNESS CALLED BY THE STATE BUT DECLARED TO BE HOSTILE.

Samuel Riley had been called as a witness for the State but subsequently declared hostile. Both on direct examination and upon cross examination, he testified to having seen a Delbert Lewis with Walter Ivory on the night of the crime. Ivory was a confessed accessory to the crime. The trial judge, over the defendant's objection, permitted the State, on rebuttal, to call the sheriff of St. Joseph County, and he testified that Delbert Lewis was an inmate of the county jail from March 7th to April 15th, which included the night of the crime. The defendant contends that this was error because the witness was rebutting the testimony of its own witness and further that the sheriff had not been named upon the State's list of witnesses.

After the witness had been declared hostile, he was passed back and forth several times between the State and the defense, excused, recalled, examined, cross examined, re-examined and re-cross examined so indiscriminately and with so little regard to the scope of the prior examinations that it would be difficult, if not impossible to determine whose witness he was at any given time. Our efforts in this regard have been hampered by the non-compliance with Ind. R. Ap. P. 7.2(A)(3)(a) requiring marginal notes which would have been of considerable assistance in our review of this transcript consisting of nearly nine hundred pages. In view of the manner in which the testimony of Riley concerning Lewis had developed, we see no error in the court's having permitted the State to rebut it. Nor is it material that the sheriff had not been named on the State's list of witnesses furnished prior to trial, as this was rebuttal which it could not have been expected to anticipate.

If we were to consider the sheriff's testimony as evidence upon the State's original case, there would still be no error,

as the statute authorizes the court, "in the further-
ance of justice," to permit original evidence during
rebuttal. Ind. Code § 35-1-35-1, Burns § 9-1805; and
the trial judge may, for good cause, permit a witness to testify,
although he not be previously named upon the list of witnesses.
*Shelby* v. *State,* (1972) 258 Ind. 439, 281 N.E.2d 885; *Griffith*
v. *State,* (1959) 239 Ind. 321, 157 N.E.2d 191.

## ISSUE XIII. DENIAL OF DUE PROCESS OF LAW BY PROSECUTORIAL MISCONDUCT.

Under this heading, the defendant re-argues his assign-
ments made under Issues VI and XI and additionally charges
that the prosecutor was responsible for improper and inac-
curate news reporting during the trial. These charges are not
borne out by the record, and we have previously determined
under Issue VIII that improper news releases, if any, did not
compromise the defendant's fair trial rights. Defendant, by
his brief, seeks to persuade us under this heading that the
trial was so riddled with prosecutorial transgressions and
erroneous court rulings as to have been a mockery of justice.
But from the record, we see only a vigorously contested trial
with clashes, innuendos and accusations inevitable in our
adversary system and in this case, for the most part, spawned
by a defense counsel's zealous and unrelenting efforts to
salvage his client's liberty.

## ISSUE XIV. ADMISSIBILITY OF MEDICAL TESTIMONY AS TO CAUSE OF DEATH.

Defendant registered a continuing objection to the testi-
mony of Doctor McNeel as to the cause of decedent's death as
being "hearsay" evidence. Doctor McNeel was the
deputy coroner under whose supervision an autopsy
was performed upon decedent's body. The objec-
tions were directed to findings related by the pathologist to the
coroner during the course of the operation. It is unnecessary
to treat this assignment, as there was other reliable and

unrefuted evidence from which the jury could, and doubtlessly did, determine beyond a reasonable doubt that the decedent died as the result of a gunshot wound. Such evidence discloses that the decedent was shot through the chest with a thirty-two caliber bullet and collapsed to the floor, that he was taken to the hospital immediately and there languished and died approximately one hour after having been shot. It is not required in a homicide case that the cause of death be proved by expert testimony. *Sexton* v. *State,* (1974) 262 Ind. 554, 319 N.E.2d 829. If some of Doctor McNeel's testimony was hearsay, it was, nevertheless, merely cumulative of other undisputed and persuasive evidence and not reversible error. Improperly admitted evidence that is corroborative only of competent and unrefuted evidence is not reversible error. *Sumpter* v. *State,* (1974) 261 Ind. 471, 306 N.E.2d 95; *Scott* v. *State,* (1973) 260 Ind. 67, 292 N.E.2d 252; *Williams* v. *State,* (1973) 261 Ind. 385, 304 N.E.2d 311.

ISSUE XV. CORRECTNESS OF RULING LIMITING EXAMINATION OF WITNESS.

On rebuttal, the defendant called as his own witness Officer Szweda, who had previously testified for the State. He directed the witness' attention to the murder weapon, whereupon the prosecutor objected that the witness had already been examined and cross examined concerning it. Defendant stated that the witness had not been so examined and that he sought to elicit matter not previously covered. Following some debate, the court concluded that the witness had previously testified concerning the weapon and accordingly restricted the defendant's interrogation to other matters.

It appears from our examination of the record that the court was mistaken in his opinion that the witness had testified concerning the gun, although the defendant has not so argued in his brief. The issue appears moot, however. If the witness had so testified previously, the court was justified in prohibiting cross examination at that stage of the proceedings. If,

on the other hand, the defendant did seek to elicit information not previously disclosed and proper on rebuttal, he did not make a record subject to appellate review by an offer to prove. *Marposon* v. *State, supra; Burnett* v. *State, supra.* We have no way of knowing whether or not competent, relevant and material evidence was excluded by the trial court's ruling.

ISSUE XVI. CORRECTNESS OF RULING CURTAILING EXAMINATION OF REBUTTAL WITNESS.

Defendant continued the interrogation of his rebuttal witness, Officer Szweda, and apparently hoped to discredit the testimony of State's witness Bernice Treadwell by revealing that she had sought reward money in conjunction with the crime. He asked the witness if anybody had called him regarding the reward and the witness answered in the affirmative. The witness was then asked if he knew the identity of the person who called, and he responded that he did. The witness was next asked if such person had testified in the case, and the witness replied that he had not. Defendant then asked the witness if he knew Bernice Treadwell and if he had talked to her. The prosecutor objected, and the objection was sustained. It is the defendant's position that relevant and material evidence was thereby excluded. Again, however, there is an absence of any offer to prove. As above, we have no way of knowing whether or not competent, relevant and material evidence was excluded by the trial court's ruling.

We find no reversible error, and the judgment of the trial court is affirmed.

Given, C.J., Arterburn and Hunter, JJ., concur; DeBruler, J., concurs in result.

NOTE.—Reported at 334 N.E.2d 673.