William C. RUTLEDGE, Appellant,

v.

STATE of Indiana, Appellee.

No. 380S69.

Supreme Court of Indiana.

July 24, 1981.

Harriette Bailey Conn, Public Defender, Kurt A. Young, Deputy Public Defender, Indianapolis, for appellant.

Theodore L. Sendak, Linley E. Pearson (on rehearing), Attys. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellant Rutledge was convicted in a trial by jury of theft, Ind.Code § 35–43–4–2, and determined to be an habitual offender, Ind.Code § 35–50–2–8, and was sentenced to consecutive terms of four years and thirty years. This direct appeal from those convictions presents the following issues:

1. Whether it was error to deny a motion for discharge for delay in trial;

2. Whether error occurred when the State was permitted to introduce evidence resulting from a search and seizure;

3. Whether it was error to give State's Instruction No. 6; and

4. Whether it was error to refuse to give appellant's Tendered Instructions 1, 3, 5 and several defining lesser and included offenses of theft.

### I.

■ Appellant filed three motions for early trial within seventy calendar days pursuant to Ind.R.Crim.P. 4(B), the first on November 2, 1978, the second on January 17, 1979, and the third on May 10, 1979. The trial court denied a motion to discharge filed on July 19, 1979. The trial commenced on September 4, 1979. The case law governing these motions requires that the movant maintain a position which is reasonably consistent with the request that he has made. *Utterback v. State*, (1974) 261 Ind. 685, 310 N.E.2d 552. Failure at any point to do so constitutes an abandonment of the request, and the motion by which it was made ceases to have legal viability.

■ Under the circumstances of this case then, when on January 17, 1979, appellant requested that he be tried within the next succeeding seventy-day period, rather than discharged upon the basis of his first motion, he is deemed to have abandoned that first motion. Likewise, when on May 10, 1979, appellant asked the trial court by his motion for early trial, to put him to trial within the next succeeding seventy-day period, rather than to discharge him upon the basis of his second motion, he is deemed to have abandoned the second motion. Therefore, the only issue raised by appellant's motion for discharge filed on July 10, 1979, was whether or not he was entitled to discharge because he had not been brought to trial within seventy calendar days after filing the third motion on May 10, 1979.

■ The record reflects that on June 22, 1979, the trial court set the case for trial to commence on September 4, 1979. On June 22, 1979, there was yet time to put appellant to trial within the seventy day period commenced by the May motion. The September 4 trial date was clearly beyond that period. At that point he took no affirmative action to call attention to the fact that a trial in September would result in his being denied that which he had requested, namely, a trial within the seventy-day period next succeeding the filing of the May motion. By not doing so, he is deemed to have abandoned the May motion, and there was no denial of his rule right upon which the trial court might properly have granted his discharge.

### II.

At 5:00 a.m. on October 14, 1978, a Rush County deputy sheriff in a patrol car stopped the pickup truck being driven by appellant and also occupied by a passenger. Appellant jumped out of the truck and walked towards the patrol car. The officer also alighted and asked appellant where he was going at that time of the morning with the riding law mower which was sitting in the bed of the truck. Appellant said that he had been paid $50.00 by a man named Floyd Robertson to haul it from Connersville to Knightstown. The officer asked for his driver's license, and noticed that the passenger was fumbling in the glove compartment and under the seat. He ordered the man out and patted down both men for weapons. He then radioed Rushville for a driver's license check.

While seated in the patrol car, the officer received a radio response on the driver's license and a report that a riding mower like the one which was then sitting in the truck had been seen earlier in the evening in front of an implement store in Rushville. Within a few minutes the officer received another report that the mower was no longer there. Appellant, overhearing this talk then stated that he had gotten the mower from that implement store. Within a short time, the officer received another report that the owner of the implement store had been contacted and that he said no one had been given authority to remove the mower

and that it should still be at the store. The officer then arrested appellant and his companion for theft of the mower.

■■■ Appellant contends that the police action in stopping his truck was an unreasonable seizure in violation of the Fourth and Fourteenth Amendments and Art. I, § 11, of the Indiana Constitution, and that evidence flowing from it and his attendant detention should have been excluded at trial. The stopping of a single car upon the street constitutes a physical and psychological intrusion upon the occupants of it, interferes with freedom of movement, causes inconvenience and consumes time. The show of authority is unsettling and creates substantial anxiety. *Delaware v. Prouse*, (1979) 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660. Even a brief stop of an automobile and detention of its occupants constitutes a seizure, and is unreasonable in contravention of the Fourth Amendment in the absence of specific articulable facts which reasonably support an inference of a violation of the laws respecting use of the vehicle. *United States v. Brignoni-Ponce*, (1975) 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607; *State v. Smithers*, (1971) 256 Ind. 512, 269 N.E.2d 874. In order to determine the reasonableness of such a warrantless intrusion, the court must examine the facts known to the officer at the time he stopped the car, and determine from those specifically articulable facts, and reasonable inferences from them, whether they reasonably warrant a suspicion of unlawful conduct. *United States v. Brignoni-Ponce, supra; Terry v. Ohio*, (1968) 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *Lawrence v. State*, (1978) 268 Ind. 330, 375 N.E.2d 208.

■ In this case, the pickup truck was observed by the deputy sheriff at 5:00 in the morning, when it was still dark, proceeding down a county road at a speed which was uncustomarily slow for the condition of the particular road. He was very familiar with the vehicles and residents along this road since he lived nearby and travelled the road three or four times a day. The truck was proceeding from the direction of Rushville, the county seat, but this stretch of road did not connect Rushville directly with any neighboring community. He inferred that this truck was "strange" to the area. In the back of the truck he could see a riding mower which was shiny and he inferred that it was brand new and unused. At this point he decided to follow the truck, and as he did so, he noted the license plate number and radioed it in to determine if it was registered to the truck, and the answer came swiftly back, "not on file". The deputy had a vague recollection of reports of recent mower thefts. He also recalled a report received much earlier the same evening of a girl jumping from a truck in Rushville or Glenwood, and the truck was reported heading in the same direction. Based upon these facts and inferences, the deputy decided to stop the truck.

In doing so, it should be noted that the deputy was not investigating any specific recent crime involving the theft of a mower. He knew of no such crime. Furthermore, the truck was being driven in a lawful manner at all times.

In *Chatman v. State*, (1975) 263 Ind. 531, 334 N.E.2d 673, we upheld as constitutional the stop of a car by the Detroit police on the basis that it had out-of-state plates and was being driven erratically, and the police inferred that the driver might be in trouble. In *Moyer v. State*, (1975) Ind.App., 379 N.E.2d 1036, the Dayton police noticed a vehicle with the license plate attached with only one screw and the rear window obstructed so as to limit vision into or out of the car. As the police car approached it, it slowed from a legal 55 to 30, and when the police drew alongside it in the passing lane it slowed to 20. The Third District Court of Appeals found justification in these facts for the stop of the car.

In *Terry v. Ohio, supra*, Officer McFadden, at 2:30 in the afternoon in downtown Cleveland, watched two men for ten minutes make "elaborately casual and oft-repeated reconnaissance" of a store window. The Supreme Court deemed such actions sufficient to engender belief that the two men were contemplating a day-light rob-

bery. The observations made by the Rush County deputy compare favorably with those made by Officer McFadden, and those involved in *Chatman* and *Moyer*. The road upon which this pickup was travelling at 5:00 a.m. was not one of the beaten paths between communities, but a back county road. The truck was proceeding in an overly cautious manner, reasonably indicative of unfamiliarity with the geography of the area and the manner in which the truck would handle the load. Taking it easy in this fashion was also consistent with a desire to locate a particular place. The shininess of the mower bespeaks recent acquisition. It could not be verified through a computer record check that the license was registered to the truck. The observations made and reasonable inferences therefrom, would, we believe, reasonably warrant a suspicion that a postlude to the theft of the mower was occurring. The initial stop of the pickup truck was therefore consistent with the Fourth Amendment and the Indiana Constitution, and as such did not serve to render evidence subsequently discovered inadmissible at trial, or unusable for probable cause purposes, either of its own force or through any taint cast upon appellant's subsequent arrest.

■ Appellant next contends that the deputy sheriff did not have probable cause to arrest him.

"The test for probable cause to make an arrest is whether at the time of the arrest the facts and circumstances within the knowledge of the officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent man of reasonable caution in believing that he had committed or was committing an offense." *Smith v. State*, (1971) 256 Ind. 603, 271 N.E.2d 133.

When the deputy received the radio broadcast that a mower had been taken from the Rushville implement store without authority from its owner, and heard appellant's volunteered statement that he had removed that mower from that store, probable cause existed for arrest of appellant. The trial court correctly denied the motion to suppress.

## III.

■ The trial court gave the State's Instruction No. 6 over objection that it changed the degree of proof from beyond a reasonable doubt to a lesser degree. The instruction was as follows:

"Any fact necessary to be proved in this case may be proved by direct evidence or by circumstantial evidence, or by both circumstantial evidence and direct evidence. Circumstantial evidence is to be regarded by the jury in all cases. When it is strong and satisfactory, the jury should so consider it, neither enlarging nor belittling its force. It should have its just and fair weight with the jury and if, when it is taken as a whole and is fairly and candidly weighed, it convinces the guarded judgment, the jury should act upon such conviction. You are not to fancy situations or occurrences which do not appear in the evidence, but you are to make such just and reasonable inferences from the circumstances proved as the guarded judgment of a reasonable man ordinarily would make under like circumstances. *Wolfe v. State*, 200 Ind. 557, 564, 159 N.E. 545, 547 (1928)."

This instruction was considered by this Court in *Steinbarger v. State*, (1948) 226 Ind. 598, 82 N.E.2d 519. The Court observed:

"By this instruction the law of reasonable doubt (Burns' 1942 Replacement, § 9–1806) is materially modified and to some extent supplanted by another rule that is somewhat similar to the law applicable in determining the question of negligence in a tort action. This is error. The jury in a criminal case may not act upon evidence that convinces 'the guarded judgment'; nor may it be told by an instruction to make such inferences as the guarded judgment of a reasonable man, ordinarily would make under like circumstances. On the contrary, to convict the evidence must be such as to convince the jury of defendant's guilt beyond a reasonable doubt. The giving of this mandato-

ry instruction is reversible error. To the extent *Wolf v. State*, [198 Ind. 267, 151 N.E. 733] *supra*, holds to the contrary it is overruled." 226 Ind. at 605, 82 N.E.2d 519.

Apparently, the prosecuting attorney relied upon *Wolfe v. State*, (1928) 200 Ind. 557, 159 N.E. 545, in requesting this instruction without determining the viability of that case. That case was expressly overruled by *Steinbarger v. State, supra*. It is our duty to reverse this conviction and order a new trial because this instruction was given.

### IV.

■ Appellant tendered his Instruction No. 1, which the court refused to give. It is the common instruction that the trier of fact is under a duty to reconcile the evidence on the theory of the accused's innocence if it can be reasonably done. This same duty described in the same language was encompassed in the court's Instruction No. 3. It is not error to refuse an instruction adequately covered by other instructions. *Carroll v. State*, (1975) 263 Ind. 696, 338 N.E.2d 264. That we find to be the case here.

■ Appellant tendered his Instruction No. 3 that conviction could justifiably rest on circumstantial evidence if it excluded all reasonable hypotheses of innocence. The State did not rely solely on circumstantial evidence here, as the testimony of appellant's companion was direct and would support a conviction. The evidence did not require this instruction. *Turner v. State*, (1970) 254 Ind. 195, 258 N.E.2d 641.

■ Appellant tendered his Instruction No. 5 which told the jury that a reasonable doubt would arise and by implication that it should acquit if it was unable to reconcile conflicting and necessary testimony. To the extent that this instruction is a correct statement of the law, it was adequately covered by the court's instruction regarding the proper manner of weighing and assessing conflicting testimony.

■ Appellant sought instructions informing the jury that it could properly find appellant guilty of the lesser offenses of criminal conversion or trespass. The court gave an instruction on criminal conversion as a lesser offense, but did not give one on trespass. There was no evidence warranting the criminal trespass instruction as the evidence showed without conflict that unauthorized control over the tractor had been exerted and no evidence of a lesser intrusion upon its possession or use. The refusal to give the instruction regarding trespass was not error. *Hash v. State*, (1972) 258 Ind. 692, 284 N.E.2d 770; *Lawrence v. State, supra*.

The conviction is reversed. The alleged errors not reached in this opinion are not likely to reoccur in the same form upon retrial.

GIVAN, C. J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.

### ON PETITION FOR REHEARING

DeBRULER, Justice.

■ Appellee, State of Indiana, has filed a petition for rehearing. Attention is called to the case of *Faught v. State*, (1979) Ind., 390 N.E.2d 1011. This case was not relied upon by the prosecutor at the trial below and did not receive mention in the State's brief on appeal. Nevertheless for reasons which will appear obvious, we turn to examine it.

In *Faught* we approved an instruction which is identical to State's Instruction No. 6, which forms the basis for our reversal here. The State contends that *Faught* has therefore overruled *Steinbarger v. State*, (1948) 226 Ind. 598, 82 N.E.2d 519. While *Faught* is upon first reading inconsistent with *Steinbarger* and the case at hand, the cases are upon deeper analysis legally consistent. In the case at bar as in *Steinbarger*, an objection was made to the instruction in the trial court on the basis that it materially modified and to some extent supplanted the law of reasonable doubt through that portion of it which directed the jury to make such inferences as the "guarded judgment of a reasonable man

ordinarily would make under like circumstances", thereby introducing the law applicable in negligence cases. *Steinbarger, supra.* In *Faught*, no objection at the trial level was made to this instruction at all. It is clear beyond all question that this Court in *Faught* was not therefore faced with a challenge to this instruction on the ground that it impermissibly invaded the law of reasonable doubt. There was indeed no error at all cognizable by this Court in *Faught* which would have rendered the giving of this instruction erroneous. We are therefore bound by *Steinbarger* through the doctrine of *stare decisis* to reverse this case.

The petition for rehearing is denied.

GIVAN, C. J., and HUNTER, PRENTICE and PRIVARNIK, JJ., concur.