Jeffrey D. BAKER, Appellant,

v.

STATE of Indiana, Appellee.

No. 385S87.

Supreme Court of Indiana.

Nov. 22, 1985.

Jack Quirk, Muncie, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Following a jury trial, appellant was convicted of Robbery and Criminal Confinement, both Class B. felonies. He was sentenced to concurrent fifteen (15) year terms of imprisonment.

The facts are: At approximately 6:30 p.m., on December 21, 1983, Robert Wright was in his rural home near Albany, Indiana. Two men wearing ski masks, one of whom was armed with a knife, entered the house through the back door. Wright was taken into a bedroom where he was bound with electrical cord and a pillowcase placed over his head. After remaining in the house somewhere between thirty and forty-five minutes, the two men left, taking with them Wright's billfold, a coin box and a total of $250 in cash comprised of an old, sweat-stained $100 bill and three new $50 bills.

Wright eventually freed himself and walked to a neighbor's house to call the police. Upon arriving at Wright's home, police officers investigated the area outside the house and there found two sets of footprints. The footprints were followed to a lane leading to a nearby quarry, where the officers discovered that a car had been parked.

The officers then learned that Thomas Hilliard and James Lockard had seen a car parked in that location as they drove past on the adjoining road at about 6:30 p.m. Hilliard and Lockard described the vehicle to the police. A "be on the lookout" was dispatched at approximately 8:20 p.m. for a 1972 or 1973 "brownish-gold" Firebird or Camaro with possibly two male subjects.

Shortly thereafter Officer William Horton of the Eaton Police Department stopped a vehicle similar to the one described in the dispatch. The occupants of the car were appellant and Doug and Kevin Baker, his brothers. After asking the men for identification and checking for outstanding warrants, Officer Horton informed the dispatcher that he had stopped the vehicle. He was requested to detain the men until Captain Ted Smith of the Delaware County Police Department could get there to question them.

Captain Smith, who had been at the crime scene, arrived approximately fifteen minutes later. He explained to the three men why they had been stopped and detained and questioned them as to their whereabouts from 6:30 p.m. until that time. Upon being told they had been at a friend's home in Eaton, Smith instructed Officer Horton to go to the friend's residence to verify the information.

Returning his attention to the occupants of the vehicle, Captain Smith asked them to show him the soles of their shoes. Two of the men were wearing shoes which appeared to Smith to match the footprints near the victim's home. After a consensual search of the trunk of the vehicle, Smith advised the three men that they were under arrest and radioed for Wright, Hilliard and Lockard to be brought to the scene. Hilliard and Lockard identified the car as the one they had seen earlier that evening. Wright was unable to positively identify any of the men as the perpetrators of the robbery.

Appellant and his brothers were taken to jail and subjected to a search. A $100 bill and two $50 bills were found in Doug Baker's sock. Prior to trial appellant filed a motion to suppress premised on an alleged lack of probable cause to stop and arrest him. Following a hearing the motion was denied.

■ Appellant contends the trial court erred in denying the motion to suppress and in admitting evidence seized as a result of the allegedly unlawful stop and arrest. He argues the police lacked probable cause to stop and detain him and further lacked probable cause to arrest him.

The contention made by appellant that the police did not have probable cause to make an investigatory stop is without merit. A police officer making such a stop need not have probable cause sufficient to make an arrest. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *Rutledge v. State* (1981), Ind., 426 N.E.2d 638. A reasonable suspicion grounded in specific facts that further investigation is necessary will suffice. *United States v. Hensley* (1985) —— U.S. ——, 105 S.Ct. 675, 83 L.Ed.2d 604; *Spikes v. State* (1984), Ind., 460 N.E.2d 954.

It is clear that Officer Horton had a reasonable suspicion to make a *Terry* stop. He was aware that a robbery had recently occurred. *See Hensley, supra.* He had been apprised that a particular model and color of vehicle was possibly involved. A vehicle fitting the description of one used by a suspect in a crime will provide reasonable suspicion justifying an investigatory stop of the vehicle. *Luckett v. State* (1972), 259 Ind. 174, 284 N.E.2d 738.

Appellant asserts that the description of the vehicle, as well as of the number of occupants, was not specific enough to justify the stop. We do not agree. If a police officer has a description of a vehicle, he is justified in making a stop of a similar vehicle. *Cheeks v. State* (1977), 266 Ind. 190, 361 N.E.2d 906; *Luckett, supra.* Further, the fact that the dispatch stated "possibly two males" does not render the stop unreasonable. The officers at the crime scene, who originated the "be on the lookout," were aware that two men had entered the victim's home and that there were two sets of footprints in the area. It was reasonable to assume that a third individual was possibly waiting in the car during the course of the robbery.

■ Appellant also argues the detention of himself and his brothers until Captain Smith arrived, fifteen minutes after their car was stopped, amounted to a *de facto* arrest on less than probable cause. It is

true that "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer* (1983), 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229, 238. Under the circumstances presented here, the fifteen minute investigatory stop was not unreasonable. *See United States v. Sharpe* (1985), —— U.S. ——, 105 S.Ct. 1568, 84 L.Ed.2d 605.

Captain Smith, who was at the crime scene when Officer Horton stopped the vehicle and had personal knowledge of facts relating to the robbery, requested Officer Horton to detain the suspects. There is no indication that Captain Smith was not diligent in making his way to the site where the suspects were being detained in order to further his investigation. Had the suspects been permitted to leave, they may have attempted to elude the police. It is apparent that "the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the suspects." *Id.* at ——, 105 S.Ct. at 1575, 84 L.Ed.2d at 616.

■ Once he arrived Captain Smith made several inquiries of appellant and his brothers then advised them they were under arrest. An officer may make a warrantless arrest when he has probable cause to believe the person has committed a felony. *Fisher v. State* (1984), Ind., 468 N.E.2d 1365. Probable cause exists when, at the time of arrest, the officer has knowledge of facts and circumstances which would warrant a man of reasonable caution and prudence to believe the individual committed the crime in question. *Green v. State* (1984), Ind., 461 N.E.2d 108; *Craig v. State* (1983), Ind., 452 N.E.2d 921.

Captain Smith did have knowledge of facts and circumstances, garnered from his own investigation and from that of other police officers, warranting a reasonable belief that appellant and his brothers had committed the robbery in question. We find no error in the denial of appellant's motion to suppress.

■ Appellant contends the trial court erred in admitting into evidence State's Exhibits 3–7, 9–15, 17, 18, 24, 27 and 33, which were photographs depicting footprints, tire prints and the tires of the suspects' vehicle. Specifically, he argues the exhibits were admitted without a proper foundation because the witnesses did not testify as to the exact time the photographs were taken or as to the exact location of the prints in relation to the victim's house.

Admission of photographic evidence rests largely within the trial court's discretion. *Buck v. State* (1983), Ind., 453 N.E.2d 993; *Jackson v. State* (1981), Ind., 426 N.E.2d 685. A photograph may be offered as demonstrative evidence if it is identified and verified as accurate by someone with knowledge of the scene depicted and if relevant and of assistance to the fact finder. *Jackson, supra.*

The photographs were taken by Officers Walter Blackmer and Horton of the Eaton Police Department. During their testimony the various photographs were admitted over appellant's objection. The officers testified that the photographs were true and accurate representations of what they observed, and both officers identified and authenticated the photographs. Such testimony constituted a sufficient foundation for admission of the exhibits. The photographs were properly admitted.

■ Appellant asserts the trial court erred in admitting into evidence State's Exhibits 26, 28, 29, 38 and 39, which were photographs depicting two $50 bills and one $100 bill taken from Doug Baker when he was searched following the arrest. Appellant contends there was no connection made between the exhibits and the criminal act charged in that the victim was unable to identify the money as that taken from him during the robbery.

The victim testified that he was robbed of three new $50 bills and one old, sweat-stained and folded $100 bill. The search of appellant's brother revealed one old and stained $100 bill and two new $50 bills. That testimony suffices to connect the exhibits and the criminal act charged. The

fact that the victim could not identify the money depicted in the photographs as that taken from him during the robbery goes to the weight rather than the admissibility of the evidence. *Williamson v. State* (1982), Ind., 436 N.E.2d 90. The trial court did not abuse its discretion in admitting the exhibits.

■ Appellant contends the trial court erred in overruling his Motion for Mistrial or Dismissal based on an allegation of prosecutorial misconduct. He argues the deputy prosecutor continually attempted to get before the jury information which had been excluded or was obviously inadmissible. This forced defense counsel to make over two hundred objections in the course of the trial. Thus the jury was presented with the idea that counsel was badgering the prosecution and attempting to keep information from the jury.

In reviewing an allegation of prosecutorial misconduct, this Court first determines whether the prosecutor in fact engaged in misconduct, then considers whether the misconduct, under all the circumstances, placed the defendant in a position of grave peril. *Burris v. State* (1984), Ind., 465 N.E.2d 171; *Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843. Whether the misconduct subjected the defendant to grave peril is determined by the probable persuasive effect of the misconduct on the jury's decision rather than by the degree of impropriety of the conduct. *Maldonado, supra; Swope v. State* (1975), 263 Ind. 148, 325 N.E.2d 193.

An examination of the record reveals an inordinate number of objections made by defense counsel to questions posed by the deputy prosecutor, a number of which were sustained by the court. However, many of those objectionable questions were either rephrased or an adequate foundation was laid to reask the questions. Consequently, the evidence the deputy prosecutor had unsuccessfully attempted to place before the jury was subsequently admitted. *See* Ind. R.A.D. 7–106(C)(1). Because the jury was allowed to consider the evidence which the court had previously precluded, we cannot

say that the deputy prosecutor engaged in misconduct which would place appellant in a position of grave peril.

The trial court is in all things affirmed.

All Justices concur.