Jimmy L. COATES, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 485 S 158.

Supreme Court of Indiana.

March 8, 1989.

Ronald C. Byal, Tipton, for appellant.

Linley E. Pearson, Atty. Gen. and Jody Cusson–Cobb, Deputy Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

In a jury trial defendant Jimmy Coates was convicted of burglary, robbery and rape for which he received concurrent sentences of ten years, five years and fourteen years respectively. We regroup the many issues raised in the defendant's direct appeal as follows: 1) dismissal of additional charge; 2) vindictive prosecution; 3) change of judge; 4) suppression of confession; 5) instruction on voluntariness of confession; 6) instruction on motive; 7) in-court identification; 8) limitation of cross-examination; 9) variance between information and evidence; 10) sufficiency of evidence on robbery; 11) *Patterson* hearsay evidence; 12) prosecutorial misconduct; 13) newly discovered evidence; 14) improper sentencing; and 15) cumulative effect of errors.

On June 6, 1983, the defendant was arrested and charged with committing rape and robbery against an elderly woman on June 3. The judge scheduled trial for May 1984. In September 1983, the defendant was released on bail. In March of 1984 he filed pretrial motions for change of judge and suppression of his confession. Having reviewed the case, a newly appointed prosecutor filed in April a separate charge of burglary against the defendant, who was again arrested. The new charge and arrest

received extensive media coverage. In May the trial court granted the defendant's motion for a continuance to negate the pretrial publicity. On the first of June, the trial court consolidated the cases and set trial for July. At trial the defendant was convicted on all three charges.

### 1. Dismissal of Additional Charge

██ The defendant contends that trial on the burglary charge over one year after his first arrest violated his right to discharge under Criminal Rule 4(C). He asserts that Criminal Rule 4(C) requires the State to bring a defendant to trial within one year on all charges arising from the same incident. He acknowledges that his motion for continuance waived his right to discharge on the rape and robbery charges. In its relevant portion, Criminal Rule 4(C) provides:

> No person shall be held on recognizance or otherwise to answer a criminal charge for a period embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, . . . .

The defendant urges that "criminal charge" should be read to mean all charges stemming from a criminal episode. We disagree. The rule establishes time limits within which the State must bring the defendant to trial as to each specific charge. The State brought the defendant to trial on the burglary charge, within three months of his arrest thereon. The defendant's right to discharge under Criminal Rule 4(C) was not violated.

### 2. Vindictive Prosecution

██ The defendant asserts that the prosecutor filed the additional charge against him three weeks before the original trial date to penalize him for exercising bail rights and for filing pre-trial motions for change of judge and suppression of evidence. He claims that the prosecutor

sought to have him in jail at the time of trial, to generate pre-trial publicity, and to assure the victim of her safety. The pre-trial publicity, he argues, prejudiced him in that it required him to seek a continuance, which in turn forced him to waive his right to discharge on the initial charges. The defendant also asserts that the instruction on burglary was improper because the charge itself should have been dismissed.

██ Where the defendant objects to the filing of an additional charge prior to trial, the defendant must show that the decision to add a charge was motivated by a desire to punish the defendant for doing something the law allowed him to do. *Cox v. State* (1985), Ind., 475 N.E.2d 664. *See United States v. Goodwin* (1982), 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74. After gaining more evidence of a hired killing, the prosecutor in *Cox* filed an additional charge of murder for hire against the defendant just a week before trial on a murder charge. 475 N.E.2d at 671. Noting *Goodwin*, this Court in *Cox* determined that the defendant was not entitled to a presumption of vindictive motivation and had failed to show its presence.[1]

In the present case, the defendant has failed to show any causal relation between his exercising of pre-trial rights and the prosecutor's decision to add the burglary charge. The transcript of the hearing on the motion to dismiss the additional charge reveals that the newly appointed prosecutor took office three months after the defendant posted bail for his first arrest. After reviewing the case, the prosecutor talked to the victim about her return to the state but did not promise her that he would seek an additional charge to ensure her safety. There is nothing to indicate that the prosecutor sought to penalize the defendant for seeking a change of judge or suppression of evidence. *See Bordenkircher v. Hayes* (1978), 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (unrealistic to assume that prosecutor will penalize or de-

---

1. *Cherry v. State* (1981), 275 Ind. 14, 414 N.E.2d 301, *cert. dismissed,* 453 U.S. 946, 102 S.Ct. 17, 69 L.Ed.2d 1033, applies where the State refiles more numerous or more severe charges against

the defendant in a second trial following a mistrial or successful appeal. *See Carpenter v. State* (1986), Ind., 501 N.E.2d 1067; *Denton v. State* (1986), Ind., 496 N.E.2d 576.

ter pretrial motions by filing additional charges). Also, the prosecutor's news release on the defendant's second arrest does not contain evidence of a desire to penalize the defendant for exercising his rights. The trial court correctly denied the motion to dismiss the burglary charge. The giving of a burglary instruction was, therefore, likewise correct.

### 3. Change of Judge

■ The defendant contends that the trial court improperly denied his motion for change of judge under Criminal Rule 12. He claims that the following conduct indicates the trial judge's prejudice against him: the judge's *sua sponte* revocation of bond without a hearing; the publicized comments of the judge on defendant's bond; and the judge's interjections during the direct examination of a witness. The defendant also claims that the revocation of the bond was a denial of due process.

When the original arrest warrant was issued on June 6, 1983, bail was set at $35,000.00. Following the defendant's motion for reduction, the trial court reduced bail to $27,500.00 on June 20, 1983. However, on August 31, 1983, the trial judge *sua sponte* revoked the defendant's ten percent bail bond authorized under Ind. Code § 35–33–8–3(a)(2) and ordered him re-arrested subject to the full bail bond requirements of Ind.Code § 35–33–8–3(a)(1). A surety bond was posted the following day.

In a criminal proceeding a ruling on a motion for change of judge is discretionary. *Denton v. State* (1986), Ind., 496 N.E.2d 576; Ind.R.Cr.P. 12. On review, the defendant must show a clear abuse of discretion. *Denton*, 496 N.E.2d 576. To show abuse of discretion, the defendant in the present case tries to establish prejudice on the trial judge's part. "Such clear bias or prejudice only exists where there is an undisputed claim or where the judge has expressed an opinion on the merits of the controversy before him." *Wallace v. State* (1985), Ind., 486 N.E.2d 445, 456, *cert. denied*, (1986), 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 723. *Accord Lasley v. State* (1987), Ind., 510 N.E.2d 1340.

The change in bail bond requirement does not demonstrate improper prejudice against the defendant. In a newspaper article submitted in support of the motion for change of judge, the judge was quoted as explaining the revocation of bond and the defendant's release. He went on to outline the purposes and safeguards of bail procedures and their connection to the presumption of innocence. The judge's reported comments were merely informational and do not show any opinion on the merits of the defendant's case.

Furthermore, we are not persuaded by allegations of "court interference and interjection into the direct examination of the victim at trial." The defendant fails to set out the claimed interference and interjection, and fails to present cogent argument explaining his bald assertion of judicial partiality as evidenced thereby. The defendant has failed to show bias or prejudice of the trial judge. We find no abuse of discretion in denying the motion for change of judge.

The defendant's due process claim based on the revocation of bond without a hearing is moot and presents nothing for review. *See Wagner v. State* (1985), Ind., 474 N.E.2d 476 (denial of petition to be let to bail); *Alleyn v. State* (1981), Ind., 427 N.E.2d 1095 (denial of appeal bond).

### 4. Suppression of Confession

The defendant raises several issues relating to his confession and evidence resulting from it. He contends that the initial stop and inquiry were illegal for want of probable cause and that his going to the police station for interrogation was involuntary. The defendant argues that the illegality of the initial stop and a police promise of help in return for cooperation tainted his confession.

On June 3, 1983, the victim was attacked and raped in her home. She described her attacker and his white automobile. A friend of the defendant, David McMannis, questioned by police placed the defendant in the vicinity of the crime near the time of

its occurrence. About six hours after the attack, the police located and stopped the defendant, who was driving a white automobile. After reading the defendant his *Miranda* rights and questioning him on his whereabouts earlier that morning, the police asked the defendant to go to the police station for more questioning. The defendant drove to the police station. At the station, the defendant heard again his *Miranda* rights and executed a waiver of them. With the defendant's permission, the police photographed him. The defendant made no incriminating statements at that time.

Three days later police requested McMannis to telephone the defendant and ask him to come to the police station. Responding to his friend's call, the defendant complied. Again he executed a waiver of his *Miranda* rights. One of the police officers told him that if he had a drug or alcohol problem the officer would try to get him some treatment. The defendant stated that he used drugs and alcohol but that he did not have a problem. The defendant then confessed to the crime. His confession led the police to the victim's stolen purses.

■ The defendant's contention that the initial stop was illegal fails to recognize that probable cause is not needed for an investigatory stop. A police officer may stop a person upon a reasonable suspicion grounded in specific facts that further investigation is necessary. *Brown v. State* (1986), Ind., 497 N.E.2d 1049; *Baker v. State* (1985), Ind., 485 N.E.2d 122. A vehicle fitting the description of one used by the crime suspect provides reasonable suspicion for making an investigatory stop. *Baker*, 485 N.E.2d at 124. *See Cheeks v. State* (1977), 266 Ind. 190, 361 N.E.2d 906. In the present case, the defendant's vehicle matched the one described by the victim, the victim's description of her attacker fit the defendant, and the defendant's friend placed him near the crime scene at the time of the attack.

■ The half hour length of the stop did not amount to a *de facto* arrest as the defendant claims. An investigatory deten-

tion must last no longer than is necessary to effect the stop's purpose. *Baker*, 485 N.E.2d at 125 (quoting *Florida v. Royer* (1983), 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229, 238). *See United States v. Sharpe* (1985), 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (bright line time limit rejected). The defendant's lack of proper identification extended the detention. Under the circumstances, the detention was not excessive in length.

■ The defendant also challenges the stop's legality because it occurred six hours after the crime. However, the facts amounting to reasonable suspicion arose during the police investigation, not at the time of the crime. The information produced by the investigation was by no means stale when the police detained the defendant.

We conclude that the initial stop and detention were not improper and, therefore, did not taint his confession which he gave three days later. Further, the record reveals that the defendant's appearance at the police station, though in response to police request after the initial stop, was voluntary.

■ Finally, the defendant attacks the voluntariness of his confession because of the alleged promise of help in exchange for cooperation. He correctly states that, to admit the confession into evidence, the State must prove to the trial court beyond a reasonable doubt that the suspect intelligently and knowingly waived his rights not to incriminate himself and to have an attorney present. *Collins v. State* (1987), Ind., 509 N.E.2d 827. On review this Court does not reweigh the evidence, but rather determines whether there was substantial evidence of probative value to support the finding that the confession was voluntary. *Id.*

A statement offering medical assistance does not constitute a promise of immunity or mitigation of punishment proscribed by *Ashby v. State* (1976), 265 Ind. 316, 354 N.E.2d 192. *Smith v. State* (1986), Ind., 500 N.E.2d 190, 193. The police officer's offer of treatment for drug or alcohol

abuse did not render the defendant's confession involuntary. Although the defendant was distressed at the time of the confession, the evidence indicates that his waiver was knowingly and intelligently made. The confession was admissible evidence.

### 5. Instruction on Voluntariness of Confession

The defendant asserts that the trial court erred in failing to instruct the jury that the State must prove beyond a reasonable doubt the voluntary nature of the confession.

For a confession to be admissible, the State must prove beyond a reasonable doubt the voluntary nature of the confession. *Collins v. State,* 509 N.E.2d 827. However, admissibility is to be determined by the court, not the jury. The defendant cites *Grey v. State* (1980), 273 Ind. 439, 404 N.E.2d 1348, as requiring an instruction that the State must prove the voluntariness of a confession beyond a reasonable doubt. We disagree. In *Grey,* this Court reviewed whether an instruction complied with the then existing statutory requirement that the trial judge permit the jury to hear evidence on the issue of voluntariness and that he instruct the jury thereon. Because the statute had been repealed and was not applicable to the proceedings at bar,[2] the analysis in *Grey* does not here apply. It was not error to fail to instruct the jury that the State must prove the voluntary nature of a confession beyond a reasonable doubt.

The instructions did not mislead the jury as to the law on the voluntariness of the confession.

### 6. Instruction on Motive

The defendant contends that the trial court erred in refusing his tendered instructions on lack of motive.

In reviewing the refusal of a tendered instruction, we must determine: (1) whether the tendered instruction correctly states the law; (2) whether there was evidence in the record to support the giving of the instruction; and, (3) whether the substance of the tendered instruction is covered by other instructions which are given. *Williams v. State* (1980), 273 Ind. 105, 402 N.E.2d 954; *Davis v. State* (1976), 265 Ind. 476, 355 N.E.2d 836.

Motive is not an element of robbery and, therefore, is not required to be proven for a conviction. *Mitchell v. State* (1985), Ind., 484 N.E.2d 24; *Boyd v. State* (1981), Ind., 425 N.E.2d 85. Likewise, motive is not an element of either rape or burglary. Ind.Code § 35–42–4–1(a); Ind. Code § 35–43–2–1. The defendant's tendered instruction did not correctly state the law and was properly refused.

### 7. In–Court Identification

The defendant asserts that the trial court erred in allowing the victim to make an in-court identification. He claims that no independent basis for the identification existed separate from an unduly suggestive pre-trial photographic array, which was suppressed by the trial court. The defendant argues that the in-court identification lacked sufficient foundation in that the victim varied somewhat her description to the police, the victim failed to positively identify the defendant in the suggestive photographic array, the victim did not describe the defendant as having any tattoos on his chest or arms, and the victim only viewed her attacker for a few minutes.

At trial, the State bears the burden of producing clear and convincing evidence of an independent basis. *Morgan v. State* (1980), 272 Ind. 504, 400 N.E.2d 111. However, a reviewing court will not reweigh the evidence "but [will] look to the evidence most favorable to the trial court and any uncontradicted evidence favorable to the appellant." *Id.* at 507, 400 N.E.2d at 113.[3]

---

2. Ind.Code § 35–5–5–1 (repealed by Acts 1981, P.L. 298, § 9, effective Sept. 1, 1982).

3. *Johnson v. State* (1982), Ind., 432 N.E.2d 403, and *Dooley v. State* (1981), Ind., 428 N.E.2d 1,

misstate the applicable standard by stating that the evidence is viewed most favorable to the appellant. *Morgan* correctly states the standard of review.

Among the factors to be considered are the witness's opportunity to view the criminal when the crime was committed, the degree of attention at the time, the accuracy of the prior description, the level of certainty in the pre-trial identification and the length of time between the crime and the identification. *Brafford v. State* (1987), Ind., 516 N.E.2d 45, 49.

Before dawn, the victim was awakened by someone shouting outside her house. She went to a window and saw a young man standing on her back walkway which was lighted by an outdoor security light. The young man broke into the unlighted house and attacked the victim, dragging her into the bedroom. The victim avoided looking at her attacker during the rape. The attacker went into the kitchen, picked up the victim's purses, and returned to the bedroom. At this time, natural light allowed the victim to again view her attacker for a few minutes. The attacker covered the victim with a blanket and fled.

Prior to the suggestive photo array, the victim described her attacker as a shirtless, slender young man with neatly cut light to medium brown hair. She said the attacker was taller than her at five foot seven inches and that he wore tight-fitting pants which appeared to be brown in color. Her later descriptions varied slightly but did not contradict the earlier one. Within a few days of the attack, the police showed the victim photos of the defendant. The victim stated that the defendant looked similar to her attacker. The victim did not describe her attacker as having any tattoos on his chest or arms. The victim also failed to identify the defendant as the young man who a year before the attack used her gasoline to refuel his car. At that time, however, she did not view the defendant up close.

The victim's testimony shows that during the time of the offense she viewed her attacker at various times for a few minutes each. The lighting at these times was sufficient to allow her to form a description of her attacker. This description closely matched that of the defendant except as to the tattoos. We conclude that the State showed clear and convincing evidence that the victim had a basis independent from the unduly suggestive photo array for making her in-court identification. *See French v. State* (1987), Ind., 516 N.E.2d 40, 43.

Of greater significance to our resolution of this issue, however, is the fact that the in-court identification of the defendant was equivocal and inconclusive. At trial the victim identified two men as looking like her attacker. One of those men was the defendant. However, she was unable to say that either of the two men committed the crime. Considering the substantial body of other incriminating evidence, including defendant's confession, we conclude that the in-court identification was not a significant factor, if any, in the jury's determination of guilt.

### 8. *Limitation of Cross–Examination*

. The defendant claims that the trial court erred in limiting his cross-examination of a witness for the State. He argues that the curtailment of cross-examination violated his right of confrontation under the Sixth Amendment to the United States Constitution.

On redirect examination, the State asked McMannis, the defendant's drinking companion on the night before the attack, "[w]hat was your primary purpose in speaking with police?" McMannis answered, "[t]o see that justice was done." On recross-examination, defense counsel reminded the witness of this previous response and then questioned the witness as follows:

Q. Are you concerned about justice, Mr. McMannis?

A. In this particular incident, I am, sir.

Q. In every other incident you don't care, do you?

The State's relevancy objection was sustained. While not required on cross-examination,[4] defense counsel made an offer to

---

4. *Strickland v. State* (1977), 265 Ind. 664, 359 N.E.2d 244; *Walker v. State* (1970), 255 Ind. 65,

262 N.E.2d 641, *overruled on other grounds in*

prove alleging that further cross-examination of the witness would show that McMannis was a known marijuana user and seller and had refused a request by police Officer Gary Stout to cooperate with them by making undercover drug purchases.

■ The right of confrontation assured by the Sixth Amendment requires that a defendant be afforded an opportunity to conduct a full, adequate and effective cross-examination. *Lagenour v. State* (1978), 268 Ind. 441, 376 N.E.2d 475.

Cross-examination is the principal means by which the believability of the witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness.

*Davis v. Alaska* (1974), 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 353. However, the Sixth Amendment does not prevent a trial judge from imposing limits on defense counsel's cross-examination for impeachment.

[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based upon concerns about, among other things, harassment, prejudice, confusion of the issues, and the witness' safety, or interrogation that is repetitive or only marginally relevant.

*Delaware v. Van Arsdall* (1986), 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674, 683. Imposing reasonable limits upon cross-examination is a determination properly within the discretion of the trial court. *Munn v. State* (1987), Ind., 505 N.E.2d 782. Only a clear abuse of that discretion warrants reversal. *Sweet v. State* (1986), Ind., 498 N.E.2d 924.

The defendant claims that by sustaining the State's objection, the trial court prevented cross-examination about McMannis's interest in "justice" as an inquiry relevant to the witness's credibility. However, we find that during earlier cross-examination, the defense had already questioned McMannis regarding whether Officer Stout had requested McMannis to assist in a criminal investigation, and to work as an informant. McMannis was also cross-examined on whether police tried to pressure him "to do things and tell them things," and whether he was threatened by police if he "didn't cooperate." We find no abuse of discretion in the trial court's limitations in view of the repetitive nature of the cross-examination in question.

### 9. Variance Between Information and Evidence

■ Appealing the denial of his motion for judgment on the evidence, the defendant asserts that there exists a fatal variance between the information and the evidence presented at trial. First he argues that the information charged him with taking the victim's property by grabbing her about the waist and arms and forcing her into the bedroom. He contends that the evidence does not support this charge. Second, he contends that the State charged him with taking the purses from the victim but only proved that the purses were taken from her presence.

The information charged the defendant with robbery, Ind.Code § 35–42–5–1 which states:

A person who knowingly or intentionally takes property from another person or from the presence of another person: (1) By using or threatening the use of force on any person; or (2) By putting any person in fear; commits robbery.

The information charges the defendant with:

knowingly and by using force on [the victim], to wit: by physically grabbing the [victim] about the waist and arms and forcing her into her bedroom where the [defendant] ordered [the victim] to remain; tak[ing] property, to wit: two (2) purses, one of which contained $60.00 in

*Hardin v. State* (1976), 265 Ind. 635, 358 N.E.2d 134.

cash, two (2) checkbooks and several credit cards from the [victim]....

Contrary to the defendant's contention, the information does not allege that he took the purses by grabbing the victim. The information alleges that he forced the victim into her bedroom, thus enabling him to take the purses from another room. The evidence at trial conformed to the charge.

Regarding his second contention, the information does not specify whether the State was alleging that he removed the purses from her person or her presence. "Minor variances from the wording of a statute do not make an information defective so long as the words, construed according to their common usage, do not mislead the accused or do not omit an essential element of the crime." *Myers v. State* (1987), Ind., 510 N.E.2d 1360, 1367. The information does not omit any essential element of robbery nor does it mislead the defendant as to what the State was charging.

### 10. Sufficiency of Evidence

The defendant asserts that the evidence fails to establish robbery in that no force was used to take the purses and the purses were not within the victim's presence.

In addressing the issue of sufficiency of evidence, we will affirm the conviction if, considering only the probative evidence and reasonable inferences supporting the verdict, without weighing evidence or assessing witness credibility, a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt. *Case v. State* (1984), Ind., 458 N.E.2d 223; *Loyd v. State* (1980), 272 Ind. 404, 398 N.E.2d 1260, *cert. denied*, 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

The evidence favorable to the verdict shows that the defendant went to the victim's home, broke a window and entered the home. In the kitchen, he grabbed the elderly victim around the arms and waist and dragged her into her bedroom where he raped her. During the rape, he threatened to choke her if she did not stop yelling. After the defendant left the bedroom, the victim started to get up, but the defendant returned and ordered her to remain in bed. The victim then heard the defendant sorting through items in the kitchen, where her purses were kept. The defendant returned to the bedroom with her two purses on his arm. The defendant covered the victim with a blanket and left with the purses. Based on the defendant's confession, the police found the two purses in a field.

The degree of force sufficient for robbery must be "a greater degree of force than would be necessary to take possession of the victim's property if no resistance was offered and that there must be enough force to constitute violence." *Maul v. State* (1984), Ind., 467 N.E.2d 1197, 1199. Here, the defendant was able to take the purses after demonstrating his ability to control the victim's own person. His use of force against her certainly constituted violence. The defendant would have us ignore the immediacy between the rape and the subsequent taking of property.

For robbery, the taking of property may be from the personal presence or the personal protection of the victim. *Smith v. State* (1969), 252 Ind. 148, 246 N.E.2d 765. In *Smith* this Court upheld a robbery conviction where the robber took property after forcing store employees to the back of the store and ordering them to lie face down. *Id.* at 152, 246 N.E.2d at 767. *See Wash v. State* (1980), Ind.App., 408 N.E.2d 634 (purse within victim's automobile was within her presence although defendant's use of force had caused her to flee before the taking).

In the present case, the purses were in the kitchen where the defendant first attacked the victim. Later, the victim heard the defendant in the kitchen sorting through the purses. Lastly, when the defendant returned to the bedroom where he had confined the victim, she saw him with her purses. The evidence is more than sufficient to show that the purses were within her presence. The evidence of robbery is sufficient.

### 11. Hearsay Evidence

The defendant asserts that he was denied a fair trial by reason of the prosecutor presenting the victim as its last witness after first calling a series of other witnesses who testified about the victim's statements under the rule of *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482. The defendant identifies five examples including statements to investigating officers Groover and Schroeder that he alleges were later repudiated by the victim's testimony.

We disagree. Three of the examples involved minor insignificant inconsistencies related only to the witness's possible uncertainty about the content of her prior statement. None of the examples show repudiated declarations. During trial she stated that she spoke to both officers upon their arrival after her report of the crime, that she "told them what happened," and that her version then was substantially the same as her trial testimony. Because of her acknowledgement of the statements and their general content, and her presence and availability for cross-examination, the admission of the *Patterson* statements was not erroneous. *Watkins v. State* (1983), Ind., 446 N.E.2d 949; *Jackson v. State* (1985), Ind.App., 485 N.E.2d 144. We find no error on this issue.

### 12. Prosecutorial Misconduct

The defendant contends that reversal is required because of prosecutorial misconduct during the State's closing argument to the jury. At issue is the following exchange:

[Prosecutor]: One last point. There is an issue about whether or not this confession is voluntary. You weigh that. Evidence, we contend, it was voluntary. However, aside from the voluntariness, the statement itself has never been disputed in regard to the confession. That is not in dispute.

[Defense Counsel]: I'm going to object to that, Your Honor. The defendant

has no obligation to dispute the statement, and asks that the Court admonish the Jury that the defendant does not have to take the stand and explain or do anything. That's an improper characterization and improper prosecutorial misconduct, commenting upon what the defendant may not do.

[Court]: That objection is sustained. The defendant does not have to dispute.

[Prosecutor]: Okay. I'll apologize and rephrase it. In regard to that, the testimony in regard to what was said to the officers was essentially consistent about the activities of that date.

The defendant had not testified during the trial. His oral confession, placed in evidence through the testimony of police officers, consisted of his admission "I did it" followed by his description of the events which occurred during the night of the crime. The defendant accompanied officers in a vehicle, directing them as to the route he had taken, pointing out the victim's residence and showing them the window by which he gained entrance, and taking the officers to the brush pile where he had hidden the purses he had taken from the victim. His confession was neither written nor electronically recorded.

The defendant urges that the prosecutor's remarks amounted to improper comment upon the defendant's constitutionally protected refusal to testify. He further contends that the ensuing jury admonishment from the court was insufficient. The State responds that the prosecutor's comment "could easily be construed to mean many things" other than defendant's failure to testify, and that even if improper, the admonishment was sufficient.

A prosecutor may not treat a defendant's exercise of his right to remain silent at trial as substantive evidence of guilt. *Griffin v. California* (1965), 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106.[5]

We do not share the defendant's interpretation of the prosecutor's remarks. The

---

**5.** However, language in *Griffin* to the effect that the Fifth Amendment "forbids ... comment by the prosecution on the accused's silence," has recently been recognized as "broad dicta." *United States v. Robinson* (1988), 485 U.S. ——, ——, 108 S.Ct. 864, 870, 99 L.Ed.2d 23, 32.

totality of the confession, which consisted both of the admission of guilt and the subsequent providing of details, was subject to dispute in the event of contradictory testimony or evidence presented at trial. We view the prosecutor's argument as merely emphasizing the consistency between the facts contained in the confession and the corroborating physical evidence and testimony. We hold that the defendant's Fifth Amendment rights were not imperiled by the prosecutor's comments.

### 13. Newly Discovered Evidence

The defendant claims that the trial court erred in denying his motion to correct errors on the issue of newly discovered evidence. He also asserts that the court should have held an evidentiary hearing on the matter before denying his motion.

At trial, McMannis, a State's witness, denied receiving money from the prosecutor. After the trial, the prosecutor provided the witness with an airline ticket back to California. This arrangement, the defendant now claims, constitutes newly discovered evidence that would have allowed him to more fully cross-examine the witness, leading to a different result.

Evidence of the post-trial travel arrangement would have little if any impeachment value. Witnesses in criminal actions can qualify for payment of certain expenses. *See* Ind.Code § 33–19–1–5 (1987). Furthermore, evidence that merely impeaches generally does not support a claim for a new trial based on newly discovered evidence. *Downs v. State* (1985), Ind., 482 N.E.2d 716. A trial court need not hold an evidentiary hearing on a motion to correct errors. *Calhoun v. State* (1985), Ind., 484 N.E.2d 7; Ind.R.Cr.P. 17. The trial court acted properly in this matter. We find no error on this issue.

### 14. Sentencing

With respect to his sentencing, the defendant presents three contentions: 1) his juvenile record should not have been considered; 2) his rape sentence was excessive; and 3) the trial court sentencing statement was inadequate.

Ind.Code § 35–38–1–3 requires that if the trial court finds aggravating or mitigating circumstances, its record must include "a statement of the court's reasons for selecting the sentence that it imposes." The statement of reasons should contain three elements: a) identification of all significant mitigating and aggravating circumstances found, b) specific facts and reasons which lead the court to find the existence of each such circumstance, and c) articulation demonstrating that the mitigating and aggravating circumstances have been evaluated and balanced in determination of the sentence. *Hammons v. State* (1986), 493 N.E.2d 1250; *Jones v. State* (1984), Ind., 467 N.E.2d 681. Thoroughness and specificity in the sentencing statement facilitate meaningful appellate review. The trial court should not simply repeat statutory language. *Totten v. State* (1985), Ind., 486 N.E.2d 519; *Page v. State* (1981), Ind., 424 N.E.2d 1021.

If otherwise adequate and complete, the sentencing statement need not be set out in a separate order book entry except in death penalty cases, but may be provided in the transcript of the sentencing hearing. *Hill v. State* (1986), Ind., 499 N.E.2d 1103.

Finding that several aggravating factors outweighed the mitigating ones, the trial court enhanced the defendant's ten year rape sentence by six years, suspending all but four of those. For the robbery and burglary sentences, the defendant received the presumptive sentences, which were to be served concurrently with the rape sentence.

The record fully demonstrates that the trial court's sentencing statement exceeded the requirements of statute and case law. Judge Nash thoroughly identified the mitigating and aggravating circumstances found, explained the supporting facts and reasons, and thoroughly articulated his thoughtful evaluation and balancing in the determination of the sentence imposed.

With respect to the effect of defendant's juvenile record upon sentencing, the trial court discussed them but noted that for purposes of sentencing, they "carried little weight due to the age of the defendant at the time of their commission, and the time that has passed since their commission."

As a reviewing court, we will not revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender. Appellate Review of Sentences Rule 1. Generally, a sentence is not manifestly unreasonable unless no reasonable person could find such sentence appropriate to the particular offense and offender. Appellate Review of Sentences Rule 2.

The sentences imposed here do not qualify for revision by this Court.

### 15. Cumulative Effect of Errors

Finally, the defendant contends that the cumulative effect of the errors he has raised compromised the fairness of his trial. As we find no reversible errors individually, we find no cumulative effect on the trial's fairness. *Didio v. State* (1984), Ind., 471 N.E.2d 1117.

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and PIVARNIK, JJ., concur.