**Timothy P. HAGGARD, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 18S00–8804–CR–406.**

Supreme Court of Indiana.

May 3, 1989.

Jack Quirk, Muncie, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

Appellant Timothy P. Haggard was tried before a jury and convicted of attempted murder, a class A felony. Ind.Code §§ 35–42–1–1, 35–41–5–1 (Burns 1985 Repl.). The trial court sentenced him to twenty years in prison.

The sole question on appeal is whether the State provided any evidence of probative value from which a jury could draw the inference that Haggard entertained a mental state supporting the verdict of guilty but mentally ill.

On March 30, 1987, Haggard went to see his wife Terri and their children. He was separated from them because his wife had petitioned for dissolution of the marriage. After helping Terri put the children to bed, Haggard wanted to talk. Periodically during the conversation he went to check on the children.

On one occasion when he appeared to be going to look in on the children, he grabbed Terri around the neck. He tried to cut her throat with a small pocket knife. The noise from the attack awoke the older child who ran to the neighbor's house for help. The neighbor arrived and threw a chair at Haggard, temporarily allowing Terri to escape. Haggard pursued his wife outside the house but was stopped by another neighbor who fired a warning shot with a pistol. Haggard retreated to his car and drove away. Later he was found unconscious; an examination determined that he had ingested a number of different drugs.

Haggard relied upon an insanity defense at trial. The jury, however, found him guilty but mentally ill. Haggard argues

that the verdict is contrary to law. He maintains he established by a preponderance of evidence that he was insane at the time of the crime. He claims the State offered nothing to contradict this evidence.

■ Both a psychologist and lay witnesses provided testimony which pointed away from Haggard's insanity defense and toward adequate mental capacity to intend the crime. The strongest evidence before the jury concerning Haggard's condition came from Dr. Ceola Digby–Berry, a psychologist whom Haggard visited immediately before committing the offense. Dr. Berry testified that Haggard was acting in an infantile manner, "what might amount to a temper tantrum." Berry said that when Haggard left her office, she concluded that he was not a danger to himself or others. The reasons for her conclusion support the State's position in this appeal. Haggard told the doctor he was going to his parents' home. Dr. Berry knew there was a restraining order prohibiting Haggard from going to his former residence. Dr. Berry testified that the existence of this order and Haggard's declaration that he was headed elsewhere led her to conclude that he was not a danger to his wife. The inference is that Haggard's mental condition was such that he could understand the law and be relied upon to comply with it. Asked what she thought about Haggard's sanity, Dr. Berry said: "It is my opinion that he was drug affected and I would hesitate to indicate that he was insane."

This medical testimony was not the only evidence suggesting that Haggard was not insane but rather was capable of forming the requisite criminal intent. The first witness on the scene was Jeff Hathaway, a neighbor, who broke the living room window to gain access and assist Terri. He described Haggard's demeanor and control as follows: "He seemed calm. When he spoke to me he spoke in a steady voice. He did not seem emotional. He wasn't in a rage. And I remember he met my eyes when he stood up and advanced toward me." Hathaway continued: "I expected him to be angry, hysterical, very adamated [sic] and he seemed quite calm and in control."

The second neighbor on the scene told of his warning Haggard to "back off" as appellant came running across the lawn pursuing his wife. Haggard apparently understood the warning and changed direction, going to his car and departing.

Terri Haggard described for the jury the visit Haggard paid to the home that evening. He visited with the children and the two parents joined in putting them to bed. Tim suggested a discussion of various issues. He wanted the discussion upstairs away from the children's bedroom on the main floor, but Terri insisted on using the kitchen, downstairs. Terri testified that "the conversation was calm. There was no argument. Nobody raised their voice." She said they talked about Tim's new girlfriend, her possible move to Indianapolis, and the division of property in their pending divorce. It was only after he checked the children's bedroom and found them asleep that he began his attack on his wife. This delay indicates Haggard's desire not to have the children awake when he attacked Terri and furthers the inference that he had the mental capacity to commit the crime.

Counsel questioned Terri at length about Tim's mental condition. She indicated she found him normal. "Did you feel at that time that he needed some psychiatric help?" "No, I never thought that."

■ The jury is entitled to consider lay evidence of sanity. *Gentry v. State* (1984), Ind., 471 N.E.2d 263. Indeed, the jury was not obligated to believe the experts at all, for as Justice Pivarnik wrote for this Court: "[T]he jury may accept or reject any statement of the witnesses, including expert witnesses, and may rely on lay testimony and other evidence in the case to determine sanity." *Mayes v. State* (1982), Ind., 440 N.E.2d 678, 681.

The lay testimony in this case plays a particularly important role on appeal. Only one of the four medical witnesses, Dr. John Yarling, testified that Haggard could neither appreciate the wrongfulness of his

conduct nor conform his behavior to the law.

Dr. Frank Krause testified that Haggard could not appreciate the wrongfulness of his act. Dr. William Sharp testified that he did not have an opinion about Haggard's insanity on the day of the offense. Dr. Aldo Buonanno also did not have an opinion of his legal sanity on that day. There was substantial testimony about various degrees of paranoia, but paranoia is not the legal definition of insanity.

The jury heard the evidence on both sides and concluded that Haggard was guilty but mentally ill. It rejected the idea that he was not guilty by reason of insanity. The two concepts are defined in Ind. Code § 35–41–3–6 (insanity) and Ind.Code § 35–36–1–1 (mentally ill). This Court has specifically rejected the notion that these terms are vague and susceptible to misinterpretation by persons of ordinary intelligence. *Taylor v. State* (1982), Ind., 440 N.E.2d 1109, 1111.

While the testimony pointing toward insanity was substantial, there was evidence of a lesser degree of mental impairment. The jury obviously believed that Haggard suffered from disturbed thinking which did not rise to the level of insanity. There was evidence from which they could have reached that conclusion.

The trial court is affirmed.

DeBRULER and PIVARNIK, JJ., concur.

GIVAN, Justice, dissenting.

I respectfully dissent from the majority opinion in this case. Although the majority correctly points out that some witnesses did testify that in their opinion appellant was sane at the time of his attack, their narrative testimony belies that conclusion and in fact supports the conclusion of the doctors who testified that in their opinion he did not have the ability to form intent. The witnesses who testified that, in their opinion, appellant was sane at the time of the attack, based their opinion on how calm he was and the absence of any provocation for the attack. Such demeanor does not support sanity but in fact supports the medical conclusion that his attack was unprovoked and was not the act of a sane but upset individual.

It is the opinion of this writer that the entire evidence in this case leads only to the conclusion that appellant proceeded in a wholly illogical manner which fully supports the expert testimony that he was unable to form the intent to commit the attack.

I would reverse the conviction.

DICKSON, J., concurs.