William P. **REINBOLD,** Appellant,

v.

**STATE of Indiana,** Appellee.

No. 44S00–8710–1018.

Supreme Court of Indiana.

June 8, 1990.

Robert S. Bechert, Randall J. Hammond, Tremper, Bechert, Leonard & Terrill, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Following a jury trial, appellant was convicted of voluntary manslaughter, a class B felony, I.C. 35–42–1–3, and was given a twenty-year sentence. Appellant now brings this direct appeal and claims that the trial court erred in giving and refusing certain instructions, in denying his motion for change of venue from the county, and in sentencing.

The facts giving rise to this appeal are essentially without dispute. In 1986, Ronnie Lothamer was a thirty-five-year-old divorced man living with his parents, who had a summer cottage on a lake. Appellant, a retired policeman with twenty years of experience on the Fort Wayne police department, and his wife, Ruth Reinbold, lived next door. The two families had a history of friction regarding property lines and easements which had included numerous loud, profanity-ridden arguments, most often between Ruth Reinbold and Ronnie Lothamer. Ruth Reinbold had also committed several acts of vandalism on the Lothamer property, of which appellant was not aware, and had written Ronnie Lothamer an antagonistic note. At his wife's urging, appellant had lodged several complaints with local officials concerning encroachments by the Lothamers on private and county easements and septic system violations and accusing Ronnie Lothamer of stealing firewood from them. As a result of one of the complaints, the Lothamers had to move a shed which they had constructed because it extended a few feet over their property line.

Ronnie Lothamer decided to remain at the lake through the winter, and on September 7, 1986, he and two others erected an oil tank to provide heat to the cottage. Appellant and Lothamer exchanged words as to whether it was being put up over the property line while Ruth shouted obscenities from her porch. After the Reinbolds went back into their house, Lothamer consulted with another neighbor over a survey map, and they agreed that the tank was within the Lothamers' boundary. When the construction was completed and Lothamer was gone, Ruth knocked the tank over. Appellant unsuccessfully sought the help of a neighbor to put it back up. He decided not to do it himself because, knowing that Lothamer had a reputation for a violent temper, he did not want to be caught alone on the Lothamers' property. When Lothamer returned later that evening and saw that his tank was down, he rushed next door. The Reinbolds were eating supper in their living room as Lothamer burst through the screen door, shouting, "God damn you Reinbolds, I'm going to kill you both." Appellant ran into their bedroom to obtain his .9 mm handgun. While appellant was in the bedroom, Ruth picked up a heavy ceramic figurine from a coffee table and ran at Lothamer, shouting for him to get out. Lothamer turned and ran back out the front door, and Ruth hurled the figurine at him. Appellant saw nothing

of this, but heard a crash of glass and his wife shouting, "Shoot him, shoot him," as he came back into the living room, and he fired two shots in rapid succession. The location of empty casings indicated that appellant had fired from near the front door. Lothamer died on the sidewalk at the front of the house of two gunshot wounds. Both entry wounds were to his back; one bullet exited through his chest and the other through his side. He was unarmed.

## I. *Instructions*

■ Appellant claims that the trial court erred by instructing the jury on voluntary manslaughter as a lesser included offense of murder and by refusing his proffered instructions on the issue of self-defense and on the evaluation of expert testimony. The test applied to review a trial court's decision to give or refuse a tendered instruction is 1) whether the instruction correctly states the law; 2) whether there was evidence in the record to support the giving of the instruction; and 3) whether the substance of the tendered instruction is covered by other instructions which are given. *Coates v. State* (1989), Ind., 534 N.E.2d 1087.

### 1. Lesser Included Offense

Appellant was charged with murder for the knowing killing of Ronnie Lothamer pursuant to I.C. 35–42–1–1(1). The information, omitting the formal parts, read as follows:

[O]n or about the 7th day of September, 1986, at and in the County of LaGrange and State of Indiana, William Paul Reinbold did then and there knowingly kill a human being, namely: Ronald L. Lothamer by shooting at and against the body of the said Ronald L. Lothamer, with a certain 9 millimeter handgun loaded with gunpowder and metal bullets, then and there held in the hand of the said William Paul Reinbold, and did then and there inflict mortal wounds in and upon the body of Ronald L. Lothamer causing him to die....

Appellant argues that it was error for the trial court to instruct the jury on voluntary manslaughter because the information was drafted so narrowly as to preclude conviction on any offense other than murder.

■ In *Wedmore v. State* (1988), Ind., 519 N.E.2d 546, this Court set out the test for determining the propriety of an instruction on a lesser included offense. The trial court must first examine the statutes involved and the charging information and then examine the evidence to see if an instruction on a lesser included offense is warranted. *Id.* at 547 (citing *Sills v. State* (1984), Ind., 463 N.E.2d 228; *Jones v. State* (1982), Ind., 438 N.E.2d 972; *Lawrence v. State* (1978), 268 Ind. 330, 375 N.E.2d 208). Appellant cites the decisions from this Court in *Sills, Jones,* and *Compton v. State* (1984), Ind., 465 N.E.2d 711, for the proposition that the prosecution may foreclose to a defendant the tactical opportunity to seek conviction on a lesser offense through the drafting of the charging instrument, most typically by closely tracking the statutory definition of the offense and by inserting no additional language which might indicate an intention to charge a lesser offense. *See Slayton v. State* (1984), Ind.App., 471 N.E.2d 1154. Appellant argues that because the instrument under which he was charged closely tracked the murder statute and there was no additional "sudden heat" language which would have alerted him that the voluntary manslaughter statute might be applicable, the State was foreclosed from seeking a conviction for voluntary manslaughter.

■ The State bears the same burden of proof in order to obtain a conviction for either murder or voluntary manslaughter. In both cases, the State must prove to a moral certainty beyond a reasonable doubt that the accused knowingly or intentionally killed a human being. The distinction between the two crimes is the presence or absence of the statutory mitigator provided by I.C. 35–42–1–3, which states that one who knowingly or intentionally kills while acting under sudden heat commits voluntary manslaughter, which is a class B felo-

ny rather than the murder felony. *Palmer v. State* (1981), Ind., 425 N.E.2d 640. The voluntary manslaughter statute provides the State the option to charge a lesser offense against one who has knowingly or intentionally killed, but whose culpability appears not to warrant prosecution for murder, and it provides an accused the opportunity to escape conviction for what would otherwise be murder upon a showing that he acted in sudden heat. A murder charge cannot be drafted so as to preclude the possibility of a conviction on voluntary manslaughter upon the introduction of evidence that the defendant acted in sudden heat and upon the acceptance of that evidence by the jury.

■ Application of the test set forth in *Wedmore* shows that the trial court properly instructed the jury on voluntary manslaughter. First, the language of the charging instrument supports the giving of an instruction on both murder and voluntary manslaughter since both involve a knowing or intentional killing. Second, the evidence adduced at trial supports instruction on the lesser included offense. Both appellant and his wife testified that as they sat having supper in their living room, Lothamer burst in, cursing them and shouting that he was going to kill them both. Appellant testified that at that moment, the word "massacre" came to his mind and that he screamed and jumped up, sending the dishes on his lap crashing to the floor, and ran for his gun. He testified further that as he came running back into the living room, he heard a crash of glass and his wife screaming, "Shoot him, shoot him," and that he then fired two shots. There was sufficient evidence that appellant was acting under sudden heat at the time of the shooting.

The fact that the State charged appellant with murder and sought final instruction on involuntary manslaughter only after the presentation of all the evidence is not determinative. In a murder trial, once evidence of sudden heat is introduced by either party, an instruction on voluntary manslaughter is appropriate. *Underwood*

*v. State* (1989), Ind., 535 N.E.2d 118; *Palmer*, 425 N.E.2d 640.

### 2. Self–Defense

■ Appellant's tendered instruction No. 18 was a verbatim quote of three paragraphs from this Court's decision in *Banks v. State* (1971), 257 Ind. 530, 276 N.E.2d 155, the substance of which is that the acts of one claiming self-defense are to be evaluated from the standpoint and perception, even if mistaken, of that individual at the time and under the circumstances of the incident as shown by the evidence. Appellant argues that the trial court erred by refusing this instruction and by giving its instruction No. 22, which set out the statutory provisions on self-defense. Jury instructions, however, are not to be considered in isolation, but rather as a whole and with reference to each other. *Whisman v. Fawcett* (1984), Ind., 470 N.E.2d 73. The trial court's final instruction No. 22, in pertinent part, read:

> The question of the existence of ... danger at the time of the killing, the necessity or apparent necessity for the use of force employed by the defendant, as well as the amount of force necessary to resist an attack, can only be determined from the perspective of the defendant at the time and under all existing circumstances.

The substance of the refused instruction was covered by the trial court's final instruction No. 22 and therefore it was not error to refuse appellant's tendered instruction No. 18. *Coates*, 534 N.E.2d 1087.

The trial court also refused to give, as submitted, appellant's tendered instructions Nos. 21 and 24. The trial court, however, indicated that both instructions were given as modified. Appellant maintains that his instructions were not given in modified form and that their omission constitutes reversible error.

■ Appellant's instruction No. 21 stated: "One who is confronted on his own property with a crime is entitled to great latitude and protection of his rights and property." The court instructed the jury that when one is confronted on his own property with another's unlawful entry

thereon, he may use the amount of force he believes is "reasonably necessary" to prevent or terminate the trespasser's unlawful entry or attack. While the court's instruction was not framed in the language preferred by appellant, it addressed the substance of appellant's tendered instruction on the issue of protection of property and therefore the refusal was not error. *Id.*

Appellant's tendered instruction No. 24 read:

> If based upon the evidence presented in this case, you determine that Ronald Lothamer was the initial aggressor in the confrontation between him and the Defendant, you are instructed that the Defendant William Reinbold is legally entitled to act in self-defense of such aggression so long as the apparent danger as perceived by the Defendant exists. With regard to the perceived or apparent danger to the Defendant, you may consider whether or not Ronald Lothamer communicated or attempted to communicate to the Defendant a withdrawal or abandonment of his initial aggression.

This proferred instruction is not a correct statement of the law, and the trial court did not err in refusing it. *Id.* The identity of the initial aggressor and the communication of the intention to withdraw from combat come into play where the defendant, not the victim, was the initial aggressor. *See* I.C. 35–41–3–2(d)(3). The purpose of the self-defense statute itself is to provide a complete legal defense for acts taken by an initial victim, who becomes the ultimate defendant, against an initial aggressor, who becomes the ultimate victim. Appellant received full and proper instruction on this issue.

### 3. Expert testimony

The trial court refused appellant's tendered instruction No. 28, which stated that the jury could consider expert psychiatric testimony concerning appellant's ability to perceive, remember and relate the events at issue here in evaluating appellant's credibility. The trial court gave instead its final instruction No. 24, which fully instructed the jury on how to evaluate expert testimony. The instruction stated in part that expert testimony is exempt from the general prohibition against opinion testimony because of the witness's education, knowledge, and experience, which charged the jury to consider and evaluate such testimony in light of the purpose for which it was elicited. This general instruction encompassed the more specific instruction sought by appellant, and while appellant's tendered instruction could have properly been given, the trial court did not err in refusing it. *French v. State* (1987), Ind., 516 N.E.2d 40.

## II. Change of Venue

Appellant moved for a change of venue from the county, asserting that extensive pre-trial publicity precluded his opportunity to receive a fair and impartial trial. In support of this motion, appellant filed a video tape of television news coverage of the incident, newspaper clippings, and the results of an independent survey conducted by an investigative agency hired by his attorney. The trial court denied the motion, and appellant claims that this ruling was erroneous in light of the extensive evidence of bias and prejudice that he produced.

To prevail on appeal, appellant must show, in addition to the existence of prejudicial pre-trial publicity, that the jurors were unable to set aside their preconceived notions of guilt and render a verdict based upon the evidence. *Burdine v. State* (1987), Ind., 515 N.E.2d 1085. A review of the record of the voir dire proceedings shows that every juror indicating an inability to put aside prior knowledge of the case, gained either through the media or from discussions with other persons, was excused for cause. Further, appellant did not use all of his peremptory challenges during the jury selection process. *Kappos v. State* (1984), Ind., 465 N.E.2d 1092. The trial court's denial of appellant's motion for change of venue was not error.

## III. Sentencing

Appellant was convicted of voluntary manslaughter, which is a class B felony

carrying a ten-year presumptive sentence. I.C. 35–50–2–5. The trial court made specific findings on the presence of both aggravating and mitigating circumstances and, upon its finding that the aggravators outweighed the mitigators, enhanced the presumptive sentence by ten years and imposed a twenty-year sentence. The court also assessed a $10,000 fine and court costs against appellant and ordered that he pay restitution of $12,578.43 to Lothamer's survivors. The court then suspended seven years of the sentence and ordered that $5,000 of the fine be suspended so long as the terms and conditions of probation were complied with. The court set a five-year term of probation, to begin following appellant's release from the Department of Corrections, and imposed the following conditions on the probation:

1. Defendant must pay all restitution sums ordered before release from probation.

2. Defendant shall not reside in a house where a firearm is present nor shall he have a firearm in his possession or control.

3. If the restitution, court costs and $1,000.00 of the fine are paid within 90 days of this date[,] an additional $4,000.00 of fine is suspended until probation is closed.

4. In the event the probation conditions are not executed within thirty (30) days [of the close of the probation period], said sentence suspension shall be null and void.

Appellant claims on appeal that the trial court erred in enhancing the presumptive sentence, in ordering restitution paid to non-victims, and in imposing conditional terms of suspension and probation.

### 1. Consideration of Aggravating Circumstances

 Appellant argues that the sentence enhancement cannot stand because the trial court considered aggravating factors which are not enumerated in I.C. 35–38–1–7(b). Although the trial court's statement of its findings does not track the statutory language, several of the aggravators found to exist in this case fall within the general categories identified by 35–38–1–7(b) as being aggravating factors appropriate for consideration in determining sentence. Further, subsection (d) of the sentencing statute expressly states that the considerations listed elsewhere in the statute "do not limit the matters that the court may consider in determining the sentence." This Court has repeatedly held that the factors listed in subsection (b) are not exclusive and that a sentencing court is free to consider other relevant factors relating to the specific facts of the crime and the defendant's character. *See Aguirre v. State* (1990), Ind., 552 N.E.2d 473; *Ballard v. State* (1988), Ind., 531 N.E.2d 196; *Miles v. State* (1984), Ind., 468 N.E.2d 1040. There was no error.

### 2. Restitution

 A trial court has the authority to order that one convicted of a felony or misdemeanor make restitution "to the victim" as a part of his sentence, I.C. 35–50–5–3(a), or as a condition of probation, I.C. 35–38–2–2(a)(5). Appellant argues that only the deceased can be the victim of the crime of voluntary manslaughter and that therefore, because Lothamer's survivors were not "victims" of the crime, the trial court exceeded its authority in ordering that he make restitution to them.

This argument has never been squarely presented to this Court. In *Whitehead v. State* (1987), Ind., 511 N.E.2d 284, this Court vacated an order which called for the defendant to pay restitution to the family of the woman he murdered. The resolution of the issue, however, was based on the fact that the statute in force at the time of this crime did not authorize a judge to order restitution as part of a sentence, *id.* at 296–97, and the issue of whether such an order was properly made to "non-victims" was not addressed.

Decisions from the Court of Appeals which have addressed this issue indicate that one who suffers harm as a result of criminal wrongdoing, even if not the party directly against whom the crime was committed, may appropriately be considered a

"victim" for the purposes of restitution. In *Kingston v. State* (1985),. Ind.App., 479 N.E.2d 1356, the defendant was convicted of leaving the scene of an accident and was ordered to pay restitution to the Indiana State Highway Department and to owners of parked cars for property damage incurred by those parties. The defendant argued that because the stoplight was damaged before and the cars were damaged after he committed the crime of leaving the scene of an accident, these parties were not victims of the crime to whom restitution was properly payable. The Court of Appeals rejected this argument, stating:

> When the crime is leaving the scene of an accident, clearly one victim of that crime is the person who suffered personal injury or property damage as a result of the accident. It is equally apparent that any persons who sustained property damage as a result of the driver's flight are victims of his crime....

*Id.* at 1359 (citation omitted).

The Court of Appeals has twice considered the appropriateness of restitution orders imposed on defendants convicted of so-called "victimless crimes." In *McCloud v. State* (1983), Ind.App., 452 N.E.2d 1053, the defendant was ordered to make restitution following a conviction for conspiracy to commit theft. He argued on appeal that because, unlike the crime of theft, "the crime of conspiracy has no 'victim,'" the trial court abused its discretion in ordering restitution. The Court of Appeals upheld the order, stating:

> While in other circumstances we might agree restitution is an inappropriate condition following a conspiracy conviction, in this case there was substantial evidence McCloud unlawfully removed Borden products from the plant in support of the conspiracy he had begun with [his co-conspirator]. In order to support its case, the State had to establish McCloud agreed to commit theft from Borden and did in fact take Borden's products as an overt act in furtherance of the conspiracy.
>
> Therefore, under the facts of this case, we believe the trial court appropriately considered Borden a "victim of the

crime" ... and acted within its discretion in ordering McCloud to pay restitution....

*Id.* at 1056–57 (citation omitted).

The defendant in *Rumple v. State* (1988), Ind.App., 529 N.E.2d 861, was convicted of possession of marijuana and was ordered to make restitution. On appeal, Rumple argued that because his crime was "victimless," the restitution order was inappropriate. The Court cited *McCloud* and *Kingston* as examples from this state of instances where "the court could point to incidents of property damage as a result of the defendants' criminal acts, enabling those who suffered the damage to be considered 'victims,'" thereby justifying restitution orders. *Id.* at 864. The Court also cited a Colorado drug case which upheld a restitution order payable to the Drug Enforcement Agency, holding that a governmental agency could appropriately be considered a victim and that the buy money expended by the agency was a loss for which restitution was a proper remedy. The Court of Appeals, however, set aside the lower court's restitution order because this particular set of facts showed a "lack of evidence ... to support a finding that any party was a victim." *Id.* at 865. The Court stated that the order did not identify to whom restitution was to be made and that even if the trial court considered the buy money expended here to be recompensable through its restitution order, "mere possession of marijuana per se causes no damage or injury to anyone." *Id.* at 864–65.

It is clear from these cases that the word "victim" in the statutes authorizing restitution has not been construed so narrowly as to limit the payment of restitution only to the person or entity actually subjected to the commission of the crime. Rather, restitution has properly been ordered payable to those shown to have suffered injury, harm or loss as a direct and immediate result of the criminal acts of a defendant. The survivors of murder victims, particularly their dependent children, could certainly come within this class. The trial court's restitution order here covered, among other

things, the funeral and burial expenses incurred by Lothamer's family, as well as a figure designated as child support for the two minor children Lothamer left. These monetary losses borne by these parties were the result of appellant's criminal acts, and the trial court acted within its statutory authority when ordering restitution for their recompense.

### 3. Conditions of Probation

Appellant was sentenced to twenty years and fined $10,000 and court costs, and the trial court suspended seven years and half of the fine. Under the trial court's sentencing order, appellant has the period of his incarceration plus the period of probation plus thirty days following the close of the probationary period (totalling eighteen years and thirty days) to make restitution and pay the fine and court costs or the sentence suspension will be revoked. The sentencing order also provided that if appellant paid the restitution, court costs, and $1,000 of the fine within ninety days of the date of that order, an additional $4,000 of the fine would also be suspended. Appellant argues that having the amount of the fine ultimately payable and the continued suspension of the sentence conditioned on payment of restitution and partial satisfaction of the fine within a prescribed time frame was an abuse of discretion.

The power to fashion a sentence within statutorily prescribed parameters is a discretionary power vested in the trial court, and a sentence will be set aside or modified on appeal only when it is manifestly unreasonable. *Scruggs v. State* (1986), Ind., 489 N.E.2d 935. A sentence is manifestly unreasonable if no reasonable person would find it appropriate given the particular offense and offender. *Henley v. State* (1988), Ind., 522 N.E.2d 376. The sentencing power includes the statutory discretion to suspend and to order probation and set out its terms, and this Court will set aside a probation order only upon a showing that the trial court abused its discretion. *State ex rel. Abel v. Vigo Circuit Court* (1984), Ind., 462 N.E.2d 61.

Although the sentencing and probation order here is admittedly unusual, none of its provisions can be described as unreasonable given the particular offense or offender. Nor is any provision in excess of the authority given to a sentencing court. The Court of Appeals has described the latitude accorded to trial courts in fashioning terms of probation as follows:

The sentencing judge has a broad power to impose conditions designed to serve the accused and the community. The only limitation is that the conditions have a reasonable relationship to the treatment of the accused and the protection of the public. The object, of course, is to produce a law abiding citizen and at the same time to protect the public against continued criminal or antisocial behavior.

*McCloud,* 452 N.E.2d at 1056 (quoting *Porth v. Templar,* 453 F.2d 330, 333 (10th Cir.1971)). The trial court's aim appears to have been to provide appellant with an incentive to make speedy restitution, which would also serve to vindicate the interests of the public. We cannot say that this was an abuse of discretion.

The conviction and sentence are affirmed. Appellant's petition for oral argument is denied.

SHEPARD, C.J., and GIVAN, PIVARNIK and DICKSON, JJ., concur.