**Alan Lehman MATHENEY, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 45S00-9002-DP-116.**

Supreme Court of Indiana.

Jan. 9, 1992.

Scott L. King, Appellate Public Defender, Crown Point, for appellant.

Linley E. Pearson, Atty. Gen. of Indiana and Arthur Thaddeus Perry, Deputy Public Defender, Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Murder and Burglary. The jury recommended the death penalty. On May 11, 1990, the trial court sentenced appellant to death.

The facts are: On March 4, 1989, appellant was given an eight-hour pass from the

Correctional Industrial Complex in Pendleton, Indiana where he was an inmate. Appellant was serving a sentence for Battery and Confinement in connection with a previous assault on his ex-wife, Lisa Bianco, who was the victim in this case. The pass authorized a trip to Indianapolis; however, appellant drove to St. Joseph County. Appellant went to the house of a friend, Rob Snider, where he changed clothes and removed an unloaded shotgun from the house without the knowledge of those present.

Appellant then drove to Mishawaka. He parked his car not far from Bianco's house and broke in through the back door. Bianco ran from her home, pursued by appellant. Neighbors witnessed the chase that ensued.

When appellant caught Bianco, he beat her with the shotgun which broke into pieces. One neighbor confronted appellant and saw him get into a car and drive away. Appellant surrendered to a policeman later that afternoon. The autopsy showed that Bianco died as a result of trauma to the head from a blunt instrument.

■ Appellant contends the trial court erred in refusing his tendered instruction on voluntary manslaughter. The test applied on review of the trial court's decision to give or refuse a tendered instruction is: 1) whether the tendered instruction correctly states the law; 2) whether there was evidence in the record to support the giving of the instruction; and 3) whether the substance of the tendered instruction was covered by other instructions which were given. *Reinbold v. State* (1990), Ind., 555 N.E.2d 463.

Appellant claims there is evidence in the record indicating that he acted in sudden heat which would support the giving of the instruction. Appellant points to testimony that he was angry at the time of Bianco's death and made growling noises at his daughter when he broke into Bianco's house.

■ Killing in the sudden heat of passion is the element that distinguishes vol-untary manslaughter from murder, but there must be sufficient provocation to induce such passion to render the defendant incapable of cool reflection. *Fox v. State* (1987), Ind., 506 N.E.2d 1090. Therefore, the evidence of anger alone does not support giving the instruction on voluntary manslaughter. Additionally, words alone cannot constitute sufficient provocation to give rise to a finding of sudden heat warranting an instruction on voluntary manslaughter. *Perigo v. State,* (1989), Ind., 541 N.E.2d 936.

■ The existence of sudden heat is determined by the trier of fact, and the defendant has the burden of showing its existence. *Storey v. State* (1990), Ind., 552 N.E.2d 477. There is some evidence in the record that appellant was angry at the time of Bianco's death. However, there was no evidence to indicate that Bianco provoked appellant either by words or actions. There is no evidence from which the jury logically could find sudden heat.

Appellant relies on *Reinbold, supra,* for the proposition that a murder charge may never be drafted to preclude the giving of a voluntary manslaughter instruction. Appellant further relies upon *Gilley v. State* (1990), Ind., 560 N.E.2d 522, for the proposition that giving a voluntary manslaughter instruction as a lesser-included offense of murder is proper even where there is no evidence of sudden heat. Appellant argues, therefore, that the trial court's refusal to give his tendered instruction on voluntary manslaughter, even in the absence of proof of sudden heat, was error.

■ We held in *Reinbold* that a murder charge cannot be drafted so as to preclude the possibility of a conviction on voluntary manslaughter upon the introduction of evidence that the defendant acted in sudden heat and upon the acceptance of that evidence by the jury. *Reinbold, supra* at 467.

In *Gilley,* both murder and voluntary manslaughter charges were brought against that defendant. No evidence of sudden heat was presented, and the jury

was instructed on both murder and voluntary manslaughter. The jury convicted the defendant of voluntary manslaughter. We held that the State was not required to establish sudden heat in order to sustain a conviction for voluntary manslaughter. *Gilley, supra* at 523.

Therefore, under *Reinbold* and *Gilley*, if the defendant meets his burden of proving sudden heat, the State may not preclude the giving of the voluntary manslaughter instruction. In the absence of evidence of sudden heat, it is the State's prerogative to elect which charge to proceed with against a defendant. Absolute discretion rests in the State to determine the crimes with which a defendant will be charged. *Compton v. State* (1984), Ind., 465 N.E.2d 711.

The insanity defense also was raised in the present case. We have held that a trial court does not err when it refuses to instruct the jury as to a lesser-included offense in a prosecution for murder where the defense of insanity is used to disprove intent to commit the greater offense, and thus would not be compatible with the inference of guilt of a lesser-included offense. *Rowe v. State* (1989), Ind., 539 N.E.2d 474.

Prior to trial, appellant's counsel discovered a letter dated January 20, 1989, written by Michael Barnes, prosecuting attorney for St. Joseph County, to appellant's family regarding appellant. In the letter, Barnes referred to appellant as a "troubled" and "very *sick* [original emphasis] man."

Appellant made a pretrial motion to call Barnes as a witness for the defense. The trial court denied this motion at a pretrial hearing. Appellant renewed his motion at trial which, again, was denied. Appellant then moved to admit a portion of the transcript of the pretrial hearing and the letter under the theory that the transcript was prior recorded testimony which authenticated the letter. The trial court denied this motion as well. Appellant claims the trial court's denial of these motions violated his right to present favorable evidence as guaranteed by the compulsory process clause of the Sixth Amendment made applicable to state criminal prosecutions by way of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

Appellant notes that he relied upon an insanity defense at trial. He cites *Haggard v. State* (1989), Ind., 537 N.E.2d 28, for the proposition that lay witnesses are competent to testify on the issue of sanity. He argues that the trial court denied him due process by not compelling Barnes to testify.

Ordinarily, counsel is not subject to being called as a witness. *Chatman v. State* (1975), 263 Ind. 531, 334 N.E.2d 673. There are exceptions, such as when counsel is believed to have material information that cannot be disclosed otherwise. *Id.* As a general rule, a prosecuting attorney cannot be called as a defense witness unless the testimony sought is required by compelling and legitimate need. *U.S. v. Dempsey* (N.D.Ill.1990), 740 F.Supp. 1295; *U.S. v. LaRouche* (D.Mass.1988), 695 F.Supp. 1290. The trial court in its discretion may deny the request if the prosecutor does not have information vital to the case. *U.S. v. Troutman* (1987), 814 F.2d 1428. Where the evidence is easily available from other sources and absent "extraordinary circumstances" or "compelling reasons," an attorney who participates in a case should not be called as a witness. *U.S. v. Dack* (1984), 747 F.2d 1172.

Appellant claims that Barnes' testimony would have helped prove the insanity defense. However, Barnes testified at the pretrial hearing that at the time he wrote the letter, he had not formed an opinion as to appellant's mental condition. If he were compelled to testify regarding his characterization of appellant as being "sick," he would state that appellant was not remorseful or regretful of his actions leading to his arrest for Battery and Confinement.

Regarding appellant's mental condition, he would have testified that appellant was sane. Barnes stated that he was "fed up" with appellant's family bringing what he felt were meritless claims concerning items believed to be wrongfully in Bianco's possession prior to the killing, and that this frustration precipitated the writing of the letter.

■ The trial court did not abuse its discretion by refusing to compel the testimony of the prosecuting attorney where evidence from other sources, such as the defense psychiatrist, was available and utilized by the defense to present the insanity defense. The availability of such evidence indicates that there was neither a compelling need nor extraordinary circumstances for the testimony.

Appellant also contends that he should have been able to introduce at trial Barnes' testimony at the pretrial hearing under the prior recorded testimony exception to the hearsay rule. Appellant argues that Barnes' former testimony would have authenticated the letter which appellant could have introduced in evidence. The trial court denied appellant's request to introduce the former testimony.

■ It is an exception to the hearsay rule to introduce in evidence testimony that was adduced at a former trial. *Schwartz v. State* (1978), 177 Ind.App. 258, 379 N.E.2d 480. The "former testimony" exception to the hearsay rule requires the movant to prove that the testimony given at a formal judicial proceeding: (1) was given under oath; (2) that the party against whom the former testimony is offered had an opportunity to cross-examine the witness at the former proceeding, and (3) that the witness is presently unavailable. *Pollard v. State* (1979), 270 Ind. 599, 388 N.E.2d 496. Admission or exclusion of former testimony of an unavailable witness is a matter committed to the discretion of the trial court. *Id.*

The decision whether to require Barnes' testimony was not based upon availability.

The trial court found no compelling need for his testimony. In light of the former testimony given in explanation of the phrasing in the letter, it is reasonable to conclude that the trial court did not find the letter or Barnes' testimony to be relevant to the defense's presentation of an insanity defense. The letter was written with regard to appellant's conduct and demeanor before the killing occurred. To allow the former testimony at trial would circumvent the rule requiring a showing of compelling need for the live testimony.

■ The question of appellant's ability to comprehend right and wrong at the time of the killing was put squarely before the jury and its decision will not be disturbed. *Miller v. State* (1988), Ind., 518 N.E.2d 794. An insanity defense decision will be disturbed only if evidence is without conflict and leads to a conclusion contrary to the conclusion of the trier of fact. *Wood v. State* (1987), Ind., 512 N.E.2d 1094.

Appellant claims that application of the death penalty statute to the facts of this case was inappropriate and unconstitutional. He claims that committing murder during burglary cannot be used as an aggravating circumstance to support a capital charge where the felony intended in the commission of the burglary was murder. Appellant contends the aggravating circumstance alleged is unconstitutional in that it fails to provide a meaningful basis for distinguishing capital from non-capital homicides. Appellant claims the General Assembly could not have intended for the burglary aggravator to apply in a situation such as in the case at bar.

Appellant argues the application of the aggravating circumstance to this case is inappropriate in that the aggravator, the burglary, serves to trigger the application of the death penalty statute. Appellant argues that the aggravator should be applicable in this case only if appellant had formed an intent to commit burglary and then later formed a separate intent to commit murder. Appellant argues that when

the killing is "part and parcel of the underlying felony" the only factor distinguishing it, as a capital as opposed to a non-capital offense, is the site of the killing, and that is an improper basis for distinction.

We held in *Judy v. State* (1981), 275 Ind. 145, 416 N.E.2d 95, that the circumstances of the killing constituted a valid aggravating factor warranting a recommendation of the death penalty. In that case, the defendant was convicted of four counts of murder. One of the statutory circumstances that the jury found in order to reach a death penalty recommendation was that the defendant had intentionally killed one of the victims while committing or attempting to commit a rape. In the *Judy* case, as well as in the case at bar, it was the manner in which the murder occurred which warranted application of the death penalty statute.

The General Assembly could reasonably have determined that a murder committed by breaking and entering a dwelling in the place where a person should be able to feel secure, merited the death penalty.

 We have held, in a case presenting a similar issue, that the death penalty statute was not unconstitutional because it permits an intentional killing in the course of a burglary to be employed as an aggravating circumstance in a case where burglary and murder also are charged as independent offenses. *Fleenor v. State* (1987), Ind., 514 N.E.2d 80, *cert. denied*, 488 U.S. 872, 109 S.Ct. 189, 102 L.Ed.2d 158. In *Fleenor*, we held that the double punishment problem could be resolved by eliminating the sentence for the burglary conviction. *Id.* Such was done in the case at bar.

Next, appellant argues that the evidence is insufficient to support the trial court's finding that appellant killed Bianco by lying in wait.

 Lying in wait is an aggravating circumstance warranting the imposition of the death penalty. Ind.Code § 35–50–2–9(b)(3). We have held that the elements of

lying in wait include watching, waiting, and concealment from the person killed. *Davis v. State* (1985), Ind., 477 N.E.2d 889, *cert. denied*, 474 U.S. 1014, 106 S.Ct. 546, 88 L.Ed.2d 475.

 We have held that our standard rules of appellate review apply in death penalty cases. *Games v. State* (1989), Ind., 535 N.E.2d 530, *cert. denied*, 493 U.S. 874, 110 S.Ct. 205, 107 L.Ed.2d 158, *reh'g denied*, 493 U.S. 985, 110 S.Ct. 523, 107 L.Ed.2d 523. The standard rule of review involves a consideration of only the probative evidence and reasonable inferences supporting the verdict without weighing the evidence or assessing witness credibility. *Braswell v. State* (1990), Ind., 550 N.E.2d 1280. The evidence is sufficient if a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt. *Id.*

 An examination of the evidence most favorable to the State shows that there was sufficient evidence upon which to find that the lying in wait aggravator was proven. There was testimony which indicated that once appellant arrived in St. Joseph County from Pendleton on the day of the killing, he dropped his mother at her home at about 1:00 p.m. There was further testimony that appellant's brother recalled arriving at Rob Snider's home at about 1:05 p.m., and that appellant left Snider's home at about 1:20 p.m. Snider testified that he recalled that appellant left Snider's house at 2:00 p.m.

There was evidence indicating that the distance from Snider's house to Lisa Bianco's house was 9.7 miles and that the drive to Mishawaka from Snider's house took approximately fifteen to twenty minutes. Police first were dispatched to Bianco's house at 3:09 p.m.

The jury had before it evidence that appellant parked the car he was driving in the parking lot of the credit union next to an alley, two houses away from Bianco's house, despite the fact there were no parked cars in the area of Bianco's resi-

dence. Footprints were found going from the credit union to Bianco's back yard. The alley was muddy, and the shoes appellant was wearing at the time of his arrest also were muddy.

Bianco's back yard was isolated and secluded by dense bushes along the perimeter. The yard is obscured by branches, a large wooden gate, and the garage. Bianco's daughter heard glass breaking and then saw appellant holding what she described as a black bar.

It would be reasonable for the trier of fact to conclude that appellant had used a circuitous approach toward Bianco's house in order to conceal himself from her and that testimony regarding the amount of time involved tended to prove that appellant waited and watched until he could take Bianco by surprise. The evidence regarding his use of a deadly weapon was indicative of his intent to kill. The evidence was sufficient to support the finding that this aggravating factor was proven beyond a reasonable doubt.

■ Appellant argues that the death penalty is inappropriate in this case. In review, we determine whether the death penalty is appropriate to the defendant and the circumstances of his crime. *Coleman v. State* (1990), Ind., 558 N.E.2d 1059.

Appellant's first contention is that the trial court failed to find the mitigating circumstance that appellant was under the influence of extreme mental and emotional disturbance at the time of the murder; therefore, that factor was not properly weighed.

Appellant further argues that his ability to conform his conduct to the requirements of law was impaired by his mental disease. However, the defense psychiatrist offered a diseased-mind diagnosis which was rejected by the jury. The facts show that appellant is intelligent and manipulative.

The manner in which appellant prepared for killing Bianco, the way in which he approached Bianco's house, and then carried out the plan indicate that he was not extremely mentally and emotionally disturbed at the time of the murder. Further, appellant had expressed repeatedly an intention to kill Bianco and had tried to solicit others to do so. This evidence supports the trial court's finding that this mitigating circumstance was not present.

Appellant's final argument against imposition of the death penalty is that his character and the nature of the offense do not warrant such a sentence. The evidence presented indicates that appellant failed to accept responsibility for his actions and that he attempted to shift responsibility to others. Appellant refuses to accept instruction or correction. The nature of this case involves domestic violence so brutal that to find, as appellant argues now, that but for his relationship with Bianco, he lived a life of normalcy, would denigrate the seriousness of this offense.

■ While appellant has a right to offer evidence of mitigating circumstances he feels are present, the trial court is under no obligation to find that the mitigators exist. *Lowery v. State* (1989), Ind., 547 N.E.2d 1046, *cert. denied*, — U.S. —, 111 S.Ct. 217, 112 L.Ed.2d 176. We will not reverse a death penalty sentence for failure to find a mitigator unless the evidence leads only to a conclusion opposite to the one reached by the trial court. *Id.* We find that the aggravators and mitigators were fully considered by the trial court and jury in reaching the death penalty sentence.

The trial court is affirmed.

DICKSON and KRAHULIK, JJ., concur.

SHEPARD, C.J., concurs in result.

DeBRULER, J., concurs and dissents with separate opinion.

DeBRULER, Justice, concurring and dissenting.

In this case, I would affirm the convictions, but set aside the penalty of death as

inappropriate to appellant and his crime. To so vote is not to excuse or to justify, but to apply the intent of the sentencing law.

The State pleaded and undertook to prove two aggravators warranting the death penalty: 1) intentional killing while committing a burglary, (current version at I.C.35–50–2–9(b)(1)(B)); and 2) murder by lying in wait, I.C.35–50–2–9(b)(3).

I can accept the first of these aggravators despite the fact that the specific criminal intent alleged in support of the burglary element of the aggravator is the intent to kill, the same intent alleged in support of the intentional killing element of the aggravator. The crime of burglary involves essentially an interference with the lawful possession and occupation of property. *Bradley v. State* (1964), 244 Ind. 630, 195 N.E.2d 347. It is separate and distinct in law from the intended felony, should it be committed; and sufficiently separate in time and space to serve as a means for identifying the sub class of intentional killings for which the death penalty may be appropriate. However, where the intent of the burglary is the intent to kill, the weight of the aggravator is greatly diminished, for the mind has formed but a single felonious intent. One who breaks and enters with the intent to steal, who, when upon being confronted by a resident chooses to kill in order to achieve the stealing or to avoid detection by authorities, is more culpable than appellant. Moreover, this would not be a capital case at all, if appellant had first met the victim in the yard and the crime had occurred at that point.

I cannot, however, accept the second of these alleged aggravators in this case. In *Thacker v. State* (1990), Ind., 556 N.E.2d 1315, 1325, this Court held:

We therefore construe this statutory aggravator as intending to identify as deserving consideration for the penalty of death those who engage in conduct constituting watching, waiting and concealment with the intent to kill, and then choosing to participate in the ambush upon arrival of the intended victim.

Here, appellant, with a shotgun in hand, parked his car in a lot down the alley from the house. He walked up the alley, entered the backyard through a gate, went to the back door, broke it in, immediately confronted his ex-wife, and pointed the gun at her. She told her to daughters to run and call the police. They did run to a neighbor's house and immediately called police. She escaped from the house with him in chase, and he then struck her repeatedly, using the gun as a club, killing her. He left the scene, but soon gave himself up. There is no basis here to find a murder by lying in wait.

The trial court found no mitigating circumstances. I find this contrary to the record, fairly viewed. I give mitigating value to appellant's conduct in turning himself in to police. In so doing, appellant removed himself as a threat to the police and to others. This is an appropriate circumstance for consideration. I.C.35–50–2–9(c)(8). I give mitigating value to the evidence as it shows that Matheney acted under the influence of extreme mental and emotional disturbance at the time of the murder. I.C.35–50–2–9(c)(2). Appellant, in his relations with neighbors, fellow workers, his children and the children of others was helpful, useful, generous and kind. At the same time he was violent and abusive to his wife, the victim, and spent the entire year of 1986 receiving professional help. In 1986, appellant was professionally diagnosed as suffering from a mental disease, schizophreniform disorder. In 1987 he pleaded guilty to battery of his wife and was committed to prison for that, and for removing his two children to Canada in violation of a custody order. 700 days in prison passed without contact with her, before he killed her in March of 1989, while on leave from prison.

During this time in prison, he was persistently motivated from within to write mail and file a host of documents, pleadings and complaints, the thrust of which were to claim that he was the victim of a conspiracy between his ex-wife, the prose-

cutor, and others. His paranoid focus came to rest upon some tapes of telephone conversations in her possession. During the trial for her murder, three psychiatrists testified with respect to appellant's condition in 1989 at the time of the killing. Of the three, one was of the opinion that appellant then suffered from a paranoid disorder constituting a mental disease or defect; the others were of the contrary opinion. By the time of the crime, appellant had long been obsessed with the idea that he was being wronged by his wife. When confronting her after breaking in the house, he ignored the two children who were present, even as they left the house to call for help, on instruction from their mother. At that time he prodded her with the gun and, according to one of the children he was "growling." The evidence shows that the gun was unloaded when stolen by appellant, and that the owner had no ammunition for it, and that appellant did not discharge it during the crime. Indeed, there is no evidence at all that the gun was loaded at any time during the crime, or even that appellant had any ammunition to fit it.

In reviewing this sentence, I am unable to declare that there is a difference between the weight of the lone aggravating circumstance and that of the several mitigating ones. The extreme penalty is therefore not, in my opinion, appropriate.