Daniel R. LUTTRELL, Appellant,

v.

STATE of Indiana, Appellee.

No. 49S00–9311–CR–01221.

Supreme Court of Indiana.

June 22, 1994.

Aaron E. Haith, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., for appellee.

GIVAN, Judge.

A jury trial resulted in the conviction of appellant of Murder. The trial court sentenced appellant to sixty (60) years, fifty-five (55) years executed, and five (5) years suspended with probation.

The facts are: On February 1, 1990, the body of Lannette Galyan was discovered near Interstate Highway 465 and Longacre Trailer Park in southern Marion County. Police investigation led to appellant's arrest on the following day. After having been given his *Miranda* warnings and signing a waiver of rights, appellant first claimed he knew nothing of the decedent's death. However, after viewing a photograph of the decedent's body as it was found at the scene of the crime, appellant confessed that he in fact was involved and stated that he and "Eddie Majors"[1] picked up the victim and took her to a friend's house where the men drank beer, smoked marijuana, and used blotter "acid" (L.S.D.).

The victim performed oral sex on both appellant and Major. Then the three started riding around in appellant's car with appellant driving, the victim in the front seat, and Major riding in the rear seat. The victim then started yelling that she was going to charge both of them with rape. Appellant stated that this frightened him. He drove to a secluded area where the body was later found, removed the victim from the car, took a straight-bladed double-edged knife from his pocket, and stabbed the victim.

Appellant denied that Major had anything to do with the stabbing. He admitted to stabbing her twice in the front; however, the autopsy showed she was stabbed a total of sixty-six times: some in the chest, some in the back, some in the throat, and a couple of strikes in the head. Appellant discarded the knife, which was later recovered by police, and the two men left the scene and went to a friend's house where they went to sleep.

Appellant claims the trial court erred when it denied his motion to suppress his confession. Appellant takes the position that when the interrogation first began, no tape recording was made and that during the thirty-five minute period from the time of his arrest until he made his confession, he was subjected to intimidation and duress.

The officer who took the confession testified that he customarily did not start taping a statement by a suspect as long as the suspect was denying his guilt and before he could understand which way the questioning was going. The officer stated that shortly after he began the questioning, he showed appellant a picture of the victim as she was found at the crime scene with the intention of breaking him down, which it did. The appellant then confessed that he in fact had done the stabbing. The tape recorder then was turned on and appellant gave his confession.

There is no evidence in this record of any intimidation or deprivation of appellant. We know of no authority for the proposition that showing a suspect a picture of the victim as found at the scene is in any sense intimidation of the accused. It should be obvious that the purpose of questioning any suspect who is denying guilt is to persuade them to be truthful.

Appellant cites the case of *Watts v. Indiana* (1949), 338 U.S. 49, 69 S.Ct. 1347, 93 L.Ed. 1801, for the proposition that a coerced confession cannot be used against a defendant. However, the facts in the case at bar do not even remotely resemble the facts in the *Watts* case. In this case, only thirty-five minutes had expired from the time appellant was arrested until he made his confession. The facts recited in the *Watts* case show that Watts was kept for two days in solitary confinement and was subjected to long ses-

---

1. For an unexplained reason, both in appellant's confession and in appellant's brief, the person is referred to as "Eddie Majors," whereas from the witness stand, he testified that his name was Roy Major. (Record at 328.)

sions of interrogation without proper rest or food, that this same format continued for three more days after he was removed from solitary confinement, and that his confession was given only after this five-day marathon of questioning by relays of officers. There is no indication in the case at bar that appellant was mistreated in any way. The trial court did not err in admitting his confession in evidence.

■ Appellant claims there is insufficient evidence to support the conviction of murder. Appellant points out that he had been drinking and using drugs when the victim started saying she was going to say she had been raped. This caused him to panic. Thus, he claims the evidence showed that he acted without malice, in sudden heat, and should only have been found guilty of manslaughter. Both the statutory definition of manslaughter, Ind.Code § 35-42-1-3, and the cases decided thereunder, see Matheney v. State (1992), Ind., 583 N.E.2d 1202, cert. denied, ___ U.S. ___, 112 S.Ct. 2320, 119 L.Ed.2d 238, failed to support appellant in his contentions.

According to appellant's own statement, the victim started making threats to claim the men had raped her while they were still riding around in the car. Appellant then drove to the secluded area, removed the victim from the car and stabbed her sixty-six times. It is obvious that appellant did not kill the victim in a sudden fit of rage in response to some provocation on her part, but because of her threat he calculatingly drove to a secluded area where he deliberately murdered her.

■ Appellant also points out that he had been drinking and using drugs, and thus was not in a condition to form the intent to kill the victim. He cites McKinstry v. State (1975), 264 Ind. 29, 338 N.E.2d 636, for the proposition that an act is done purposely only if it is willed and designed with a plan to be done and is done with an awareness of probable consequences. However, that is precisely what we have in the case at bar.

Although appellant had been drinking and using drugs, he was able to ride around in his car with the victim and Major. By his own account, he became panicky when the victim threatened to charge rape. He deliberately drove to a secluded place where he was able to remove the victim from the automobile, produce a knife from his pocket, and proceed to stab her. He points out that in his confession he could only remember stabbing her twice, he thought "in the front." However, in view of the many details he articulated in his confession, the jury was entitled to determine that his several incidents of forgetfulness were not wholly truthful. He further claims that he in fact did not intend to kill the victim. Such a claim is ludicrous in view of the sixty-six stab wounds suffered by the victim.

■ In addition to appellant's confession, Larry Ratliff testified that about 4:00 to 4:30 on the morning of February 1, Major and appellant came to his house and that Major was carrying a sack. At the trial, Ratliff denied that he knew the contents of the sack. However, he acknowledged that in earlier statements, he stated that appellant had changed clothes, that the bag contained clothes, and that Ratliff had thrown it into the fireplace and burned both the sack and the clothing.

He stated that Major told him they had killed Galyan, the victim in this case. Ratliff testified that he recalled telling Detective Baker that appellant had told him that he had stabbed the victim thirty or forty times. However, at the trial, he stated that he thought Major was the only one who told him of the killing.

There is ample evidence in this record to support the verdict of the jury. The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, DICKSON and SULLIVAN, JJ., concur.